UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., Plaintiff, v. CHELSEA SANDWICH LLC and GLOBAL COMPANIES LLC, Defendants. | ) ) ) ) ) ) CIVIL ACTION NO. 1:24-CV-11766-RGS ) ) ) ) ) ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS AS MOOT

## <u>INTRODUCTION</u>

When Defendants Global Companies LLC and Chelsea Sandwich LLC[1] filed their original motion to dismiss in January 2025 ("First Motion"), this case was moot. By that time, Global had executed the August 2024 Administrative Order on Consent ("Order") with the Environmental Protection Agency ("EPA") resolving all alleged numeric violations in the original complaint. Consistent with the Order, Global Companies closed the Revere oil storage terminal ("Revere Facility") in October 2024, permanently ceased all discharges under its National Pollutant Discharge Elimination System ("NPDES") permit, and requested that EPA terminate the permit. Chelsea Sandwich had selected, designed, tested, and ordered the Newterra stormwater treatment system ("Newterra System") for the Chelsea terminal ("Chelsea Facility") and was on track to complete installation by April 30, 2025, as required by the Order. Under the

---

[1] As used herein, Global Companies LLC ("Global Companies") and Chelsea Sandwich LLC ("Chelsea Sandwich"), and together, "Global."

standard set forth by the Second, Fifth, and Eight Circuits, there was no "realistic prospect that the violations alleged in its complaint will continue," and the case was thus moot. *Environmental Conservation Org. v. City of Dallas*, 529 F.3d 519, 528 (5th Cir. 2008); *Comfort Lake Ass'n, Inc. v. Dresel Contr., Inc.*, 138 F.3d 351, 355 (8th Cir. 1998); *Atlantic States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 128 (2d. Cir. 1991).[2]

Plaintiff Conservation Law Foundation, Inc. ("CLF") filed its Amended Complaint on May 15, 2025, mainly to eliminate dozens of allegations that the parties agreed to remove after the Supreme Court issued its decision in *City and County of San Francisco, California v. Environmental Protection Agency*, 604 U.S. ____, 145 S. Ct. 704 (2025) ("*San Francisco*"). The remaining claims in the Amended Complaint, including newly added allegations of monitoring and numeric violations, are moot for the same reasons as before.

Indeed, two events since the First Motion further confirm the mootness of this case:

*First*, EPA terminated the permit for the Revere Facility in May 2025. Notably, in the Notice of Intent to Terminate, EPA confirmed that the "activities and discharges" controlled by the Revere Permit (defined below) "have been permanently eliminated." EPA's notice also confirmed Global's efforts about the exceedances at the at-issue facilities since shortly after the effective date of the 2022 final permits, and that these efforts culminated in the Order.

*Second*, Chelsea Sandwich completed installation of the Newterra System at the Chelsea Facility on April 22, 2025, as required by the Order. The first month of weekly sampling has

---

[2] Because the mootness arguments raised in Global's First Motion continue to apply to the Amended Complaint, Global hereby incorporates the Background Section, Sections I(A) and I(B) of its Memorandum of Law (ECF 17), Sections I-III of its Reply (ECF 24), and the accompanying attachments by reference herein.

consistently shown that the system is working as intended, with *no exceedances of any permit parameters*.

To date, CLF has not raised a specific concern with, or proposed alternatives for, the solutions prescribed in the Order: the closure of the Revere Facility and the Newterra System at the Chelsea Facility. Nor would any concern be reasonable at this stage given the termination of the Revere Permit and demonstrated success of the Chelsea treatment system.

Instead, CLF incorrectly claims that this case can continue based on alleged monitoring and sampling violations that—other than a single day at the Chelsea Facility—occurred at the now-closed Revere Facility. Indeed, many of the violations are alleged under prior NPDES permits and conditions that ended in 2022. CLF's allegations stem from their misunderstanding of the Revere Facility's stormwater system and how samples are reported to EPA. EPA's decision not to address—or even reference—these alleged violations in the Order or in the many years prior is strong evidence that the claims are not what CLF purports them to be.

That leaves a single day of alleged monitoring violations at the Chelsea Facility. Even assuming their veracity at this stage, it has long been established that a single violation does not suffice to pursue claims under the Clean Water Act.

There is also no purpose to CLF's attempt to seek penalties. Global has complied with every aspect of the Order, and the Clean Water Act's consent order process worked exactly as intended. There is no "realistic prospect" that the violations alleged in the Amended Complaint will continue and no deterrence value in CLF seeking penalties that EPA did not. Compliance has been achieved without penalties and without CLF having influenced the outcome.

## BACKGROUND

A.    *The Facilities and NPDES Permits*

At issue in this proceeding are two oil storage facilities in Revere and Chelsea, Massachusetts. The Chelsea Facility discharges treated stormwater into Chelsea Creek pursuant to NPDES permit no. MA0003280 issued in 2022 by EPA to Chelsea Sandwich ("Chelsea Permit").[3] The Revere Facility was formerly operated by Global Companies. The Revere Facility discharged under NPDES permit nos. MA0000825 and MA0003425 from 2019 until December 2022, when EPA consolidated the two permits under permit no. MA0000825 ("Revere Permit") and ended the permit ending in 3425.[4] The Revere Facility ceased operations in October 2024, and EPA terminated the Revere Permit in May 2025. Charron Decl., ¶¶ 9-11, Exhibits ("Ex.") C-D.  Both facilites are subject to the August 2024 Order.[5]

B.    *Procedural Background*

(i)    The Original Complaint and First Motion to Dismiss

CLF served its Notice of Violations and Intent to File Suit Under the Clean Water Act ("Notice") on Global on May 9, 2024, alleging violations at each facility dating back to 2019, which included claims under the current and prior permits. See ECF 1, Exs. 1-2; Notice at 9-15.

Two months later, on July 9, 2024, CLF filed its original complaint. See ECF 1. The complaint added numerous additional violations not contained in the Notice, including additional

---

[3] The Massachusetts Department of Environmental Protection ("MassDEP") also issued parallel permits with similar terms under the state Clean Waters Act.

[4] See EPA's Notice of Intent to Terminate the Revere Permit for more background on the permitting history of the Revere Facility. Declaration of Steven Charron ("Charron Decl."), Ex. C.

[5] Additional background is provided in Global's Memorandum of Law (ECF 17) at pages 5-9.

numeric effluent violations, monitoring and reporting violations, and alleged eyewitness accounts of oil sheens observed near the facilities. Count I alleged various violations of the permits' effluent limitations; Count II alleged violations of the Massachusetts Water Quality Standards; Count III alleged violations of the permits' narrative effluent limitations relating to characteristics of the discharge, control measures, best management practices ("BMPS"), and stormwater pollution prevention plans ("SWPPP"); and Count IV alleged violations of the permits' monitoring and reporting requirements.

In response, Global filed its First Motion and supporting materials on January 31, 2025. See ECF 16-17. The motion sought dismissal of CLF's claims on four grounds: (i) the complaint was moot because EPA and Global had entered into the Order that addressed all exceedances alleged in the complaint, such that there was no realistic prospect that the violations would continue; (ii) CLF's allegations based on generic permit requirements, including alleged violations of the Massachusetts Water Quality Standards, were impermissibly vague and unenforceable under the Clean Water Act; (iii) CLF had provided insufficient notice of numerous violations claimed in the complaint; and (iv) original Defendants Global GP LLC, Global Partners LP, and Global Operating LLC must be dismissed because those entities were not permittees, owners, or operators of either of the facilities that are the subject of this suit. Subsequent to the filing of the First Motion, the parties stipulated to the dismissal of Defendants Global GP LLC, Global Partners LP, and Global Operating LLC. See ECF 19. Thereafter, CLF filed its Opposition to the First Motion on February 14, 2025, and Global filed its Reply thereto on February 25, 2025. See ECF 21, 24.

(ii)    *San Francisco v. EPA* and the Parties' Joint Statement

The Supreme Court, on March 4, 2025, issued its decision in *San Francisco*, holding that

certain "end-result" provisions in NPDES permits conditioning compliance on whether receiving waters meet applicable water quality standards were impermissible under the Clean Water Act. 145 S. Ct. at 720. At the hearing on the First Motion on March 14, 2025, CLF requested additional time to determine whether any of its claims were precluded by *San Francisco*. Global agreed. In response, the Court took the First Motion under advisement and ordered the parties to file a Joint Statement after conferring. See ECF 30-31.

In the Joint Statement filed on May 7, 2025, CLF stipulated to the dismissal without prejudice of Count II of the complaint in its entirety (¶¶ 239-266; 395-405), and its Count III claims of narrative effluent violations relating to the characteristics of the discharge (¶¶ 267-277; 407-409). See ECF 33. In turn, Global agreed not to move for dismissal of CLF's claims of narrative effluent violations relating to the facilities' control measures and the permits' corrective action requirements under *San Francisco* except in certain circumstances.[6] The stipulated dismissal of some, but not all, of CLF's claims necessitated the filing of an amended complaint, which CLF did on May 15, 2025. See ECF 36. Procedurally, the Amended Complaint mooted Global's First Motion to Dismiss. See ECF 37.

(iii)     <u>CLF's Amended Complaint</u>

The Amended Complaint contains three counts: Count I (carried forward from the original complaint) alleges various violations of the permits' effluent limitations (see ¶¶ 380-395); Count II (a truncated Count III from the original complaint) alleges violations of the

---

[6] Global reserved the right to seek dismissal of CLF's corrective action requirement claims under *San Francisco* if a federal court issues a new decision interpreting *San Francisco* as disallowing such requirements, or if CLF moves to amend its complaint to reinsert the claims dismissed in the Joint Statement or introduce similar claims involving the same permit provisions as those at issue in the dismissed claims.

permits' narrative effluent limitations relating to control measures, BMPS, and SWPPPS (see ¶¶ 396-400); and Count III (also carried forward from Count IV of the original complaint) alleges violations of the permits' monitoring and reporting requirements (see ¶¶ 402-411). Count I of the Amended Complaint alleges new effluent violations at the Chelsea Facility from August 2024 to March 2025, and the Revere Facility from June 2024 to October 2024. Most of these new allegations were for the period when Global was implementing the Order. Count III also includes 268 additional alleged sampling violations at the Revere Facility from before it closed (Am. Comp. ¶¶ 340-343). The Count III violations are summarized below:

| Permit No. | Nature of Allegations | Allegation Days | Amended Complaint Paragraphs |
|---|---|---|---|
| **2022 Chelsea Permit (MA0003280)** | Alleged failure to collect, analyze, report 14 required effluent grab samples due to "laboratory error or invalid test" | 1 (2/28/23) | ¶¶ 297 – 313 |
| **2022 Revere Permit (MA0000825)** | Alleged failures principally related to taking grab samples, including 480 from Outfall 1 and 75 from Outfall 3 | Multiple | ¶¶ 313-327, 337-343, 356-357, 360 |
| **2014 Global South Permit (MA0000825)** | 56 alleged violations related to the September 2022 reporting period | 1 (Sept. 2022) | ¶¶ 347, 349-351 |
| **2014 Global [Petroleum] Revere Permit (MA0003425)** | Alleged failures principally related to taking grab samples, including 96 from Outfall 1 and 87 from Outfall 3 | Multiple | ¶¶ 329-336, 344-348 |

As the table confirms:

- CLF alleges only a single day of monitoring violations at the Chelsea Facility (Feb. 28, 2023).

- About 740 of the allegations relate to alleged "failures" to collect samples from the Revere Facility's outfalls. But these are simply the result of no stormwater flows running through the applicable outfall during the reporting period. Declaration of Thomas Henderson ("Henderson Decl."), ¶¶ 8-9, 11.  They are not violations.

- Many of the other alleged violations relate to the MA0003425 permit for a portion of the Revere Facility that ended in December 2022, including provisions that have not applied since then.  See, e.g., Henderson Decl., ¶ 10.

C.    *Events After the First Motion*

Two events since the First Motion further show the mootness of CLF's claims.

(i)    EPA terminated the Revere Permit

On May 12, 2025, EPA issued its final decision terminating the Revere Permit. Charron Decl., ¶ 11, Ex. D. In the Statement of Basis of its Notice of Intent to Terminate the Revere Permit, EPA confirmed many facts that Global included in the First Motion, including that "Global has been in communication with EPA about permit exceedances at both its facilities since shortly after the effective date of the 2022 final permits. Those discussions culminated in the [Order] that requires Global to take several actions to address the exceedances." Charron Decl., Ex. C at 8, § 4.3. EPA further found that the Order addressed the exceedances at the Revere Facility by requiring Global to permanently cease all discharges and decommission the facility by December 31, 2024. *Id*. EPA ultimately concluded that the "activities and discharges" controlled by the Revere Permit "have been permanently eliminated." *Id*. at Ex. C at 9.[7]

(ii)    The Chelsea Newterra Treatment System Is Online and Effective

As of April 22, 2025, Chelsea Sandwich completed installation of the Newterra System, ahead of the April 30, 2025 deadline set forth in the Order. Charron Decl., ¶ 7. Global provided notice of the installation to EPA and MassDEP on April 28, 2025. *Id.* at ¶ 8, Ex. B. The first round of weekly effluent sampling after treatment through the Newterra System occurred on April 22, 2025. Henderson Decl., ¶ 12. After treatment through the Newterra System, all effluent

---

[7] The notice also states that the new owner has general permit coverage for discharges at the property for its redevelopment. Charron Decl., Ex. C. at 7-8, § 4.2.

parameters covered under the Chelsea Permit and the Order measured as either non-detect or under the Chelsea Permit limits. *Id.* at ¶ 12, Ex. E. In each of the four subsequent rounds of post-treatment effluent samples taken on May 2, 6, 13, and 20, 2025, all effluent parameters continued to measure as non-detect or below the applicable Chelsea Permit limit. *Id.* at ¶¶ 13-16, Exs. F-I. Figure 1 below summarizes the results.

**Figure 1**
**Chelsea Newterra Treatment System Results[89]**

| Analyte | Permit Daily Maximum Limitation | Permit Monthly Average Limitation | Unit | 4/22/2025 AQUIP-INF | 4/22/2025 CS-001 | 5/2/2025 AQUIP-INF | 5/2/2025 CS-001 | 5/6/2025 AQUIP-INF | 5/6/2025 CS-001 | 5/13/2025 AQUIP-INF | 5/13/2025 CS-001 | 5/20/2025 AQUIP-INF | 5/20/2025 CS-001 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benzene | 5 | -- | µg/L | < 1.0 | < 1.0 | < 1.0 | < 1.0 | < 1.0 | < 1.0 | < 1.0 | < 1.0 | < 1.0 | < 1.0 |
| Benzo(a)anthracene | -- | 0.0013 | µg/L | 0.0798 | < 0.0481 | 0.0904 | < 0.0481 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 |
| Benzo(a)pyrene | -- | 0.00013 | µg/L | < 0.050 | < 0.0481 | < 0.0481 | < 0.0481 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 |
| Benzo(b)fluoranthene | -- | 0.0013 | µg/L | 0.0613 | < 0.0481 | 0.0752 | < 0.0481 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 |
| Benzo(k)fluoranthene | -- | 0.013 | µg/L | < 0.050 | < 0.0481 | < 0.0481 | < 0.0481 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 |
| Chrysene | -- | 0.13 | µg/L | < 0.050 | < 0.0481 | < 0.0481 | < 0.0481 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 |
| Dibenzo(a,h)anthracene | -- | 0.00013 | µg/L | < 0.050 | < 0.0481 | < 0.0481 | < 0.0481 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 |
| Indeno(1,2,3-cd)pyrene | -- | 0.0013 | µg/L | < 0.050 | < 0.0481 | < 0.0481 | < 0.0481 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 | < 0.0463 |
| Naphthalene | 20 | -- | µg/L | < 0.050 | < 0.0481 | NA | < 0.0481 | NA | NA | NA | NA | NA | NA |
| Total Copper | 5.8 | -- | µg/L | 10.5 | < 4.0 | 19.2 | < 4.0 | 7.39 | < 4.0 | 8.49 | < 4.0 | 5.4 | < 4.0 |
| Total Zinc | 95.1 | -- | µg/L | 80 | < 16.0 | 153 | < 16.0 | 38.1 | < 16.0 | < 16.0 | < 16.0 | 19.7 | 19.7 |
| Total Ammonia as Nitrogen | 1.8 | -- | mg/L | NA | 0.308 | 0.583 | 0.192 | < 0.1 | 0.143 | < 0.1 | < 0.1 | 0.415 | 0.19 |
| Total Suspended Solids | 100 | 30 | mg/L | < 20.0 | < 5.0 | 24.5 | < 5.0 | < 10.0 | < 5.0 | < 10.0 | 5 | < 5.0 | < 5.0 |
| Total Residual Chlorine | 30 | -- | µg/L | 10 | 10 | 20 | 10 | 10 | 0 | 20 | 0 | 20 | 0 |
| pH | 6.5 - 8.5 | | SU | 6.9 | 7.3 | 6.7 | 6.9 | 7.1 | 7.5 | 6.8 | 6.8 | 7 | 6.7 |
| Oil & Grease | 15 | -- | mg/L | < 1.9 | < 1.9 | NA | < 2.1 | NA | NA | NA | NA | NA | NA |
| Turbidity | -- | -- | NTU | 0.45 | 0.9 | NA | 15 | NA | < 0.3 | NA | NA | NA | NA |
| Chemical Oxygen Demand | -- | -- | mg/L | NA | < 10.0 | NA | < 10.0 | NA | NA | NA | NA | NA | NA |
| Total cyanide | 5 | -- | mg/L | 2.0 J | < 1.0 | NA | < 1.0 | NA | NA | NA | NA | NA | NA |
| Fecal coliform | -- | -- | MPN/100ml | 9.79 | 2.02 | NA | 2.02 | NA | NA | NA | NA | NA | NA |
| Enterococcus | -- | -- | MPN/100ml | 74.39 | 42.57 | NA | 61.98 | NA | NA | NA | NA | NA | NA |

Notes:

Analytes shaded in yellow indicates a Consent Order required analyte
**Bold**, indicates analyte detected above laboratory reporting limit
Concentration exceeds Permit Daily Maximum Limitation and/or the Permit Monthly Average Limitation

## STANDARD OF REVIEW

A court must dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) if the case is moot. "As a general rule, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *City of Dallas*, 529 F.3d at 527

---

[8] Henderson Decl., ¶ 17, Ex. J. The exhibit contains additional explanatory notes. Under the Order, Chelsea Sandwich must collect weekly samples for 8 consecutive weeks beginning May 1, 2025. See Charron Decl., Ex. A at Par. IV.6. Once that occurs Chelsea Sandwich may resume normal permit sampling frequency (typically monthly).

[9] Global's consultant, Roux Associates, took pretreatment and posttreatment samples. Henderson Decl., ¶ 5. The pretreatment results are shown in the "AQUIP-INF" column (Aquip Inflow) and the posttreatment results are in the "CS-001" column (the outfall identifier).

(cleaned up); see also *Harris v. University of Mass. Lowell*, 43 F.4th 187, 191 (2022) (A case is

moot "if the court is not capable of providing any relief which will redress the alleged injury.")

(quoting *Gulf of Maine Fishermen's Alliance v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002)). "[I]t is

not enough that a dispute was very much alive when suit was filed[;]…[t]he parties must

continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Cont'l Bank Corp.*,

494 U.S. 472, 477–78 (1990) (cleaned up). Mootness can be determined at the pleadings stage

based on "(a) implications from documents attached to or fairly incorporated into the . . .

complaint, (b) facts susceptible to judicial notice [including official public records], and (c) [any]

concessions in [the plaintiff]'s response to the motion to dismiss." *Nat'l Ass'n of Gov't Emps.,

Inc. v. Yellen*, 120 F.4th 904, 907 (1st Cir. 2024) (cleaned up). Mootness "should ordinarily be

decided [before] any determination on the merits." *Am. Civ. Liberties Union of Mass. v. U.S.

Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013).

<u>**ARGUMENT**</u>

**II.    CLF's claims are moot.**

> *A.  The Revere Facility claims are moot because the facility is now closed, EPA has*
> *terminated the Revere Permit, no further discharges under the permit can occur, and*
> *Global Companies has complied with an EPA compliance order addressing the same*
> *issues as those in the Amended Complaint.*

Where, like here, EPA has entered into an administrative compliance order that applies to

the same activities alleged in a citizen suit, the suit's "claims for relief are moot unless [the

citizen-suit plaintiff] proves that there is a realistic prospect that the violations alleged in its

complaint will continue." *City of Dallas*, 529 F.3d at 528 (citing *Comfort Lake Ass'n, Inc.*, 138

F.3d at 355; *Eastman Kodak Co.*, 933 F.2d at 128). This is the case even where the enforcement

action taken by the governmental agency occurs after the initial complaint is filed. See, e.g., *City

of Dallas*, 529 F.3d at 523 (enforcement action commenced over two years after citizen-plaintiff

complaint filed); *Comfort Lake Ass'n, Inc.*, 138 F.3d at 354 (stipulation agreement entered about two months after complaint filed); *Eastman Kodak Co.*, 933 F.2d at 126 (state order entered about 10 months after initial complaint filed). This approach underlies the well-established principle that citizen suits are a supplement to government enforcement action. See *Blackstone Headwaters Coal., Inc. v. Gallo Builders, Inc.*, 32 F.4th 99, 108 (1st Cir. 2022) ("'[c]itizen suits are,' as a general matter, 'an important *supplement* to government enforcement'" of the CWA) (quoting *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F. 2d 1128, 1136 (11th Cir. 1990)). "'Primary enforcement responsibility' for the CWA lies with the EPA," and a citizen's enforcement role "does not supplant the discretionary authority of the EPA" in choosing whether to take, or not take, certain enforcement actions. *Conservation Law Found., Inc. v. Massachusetts Water Resource Auth.*, U.S. Dist. Ct., No. 22-10626-RGS, slip op. at *4 (D. Mass. Feb. 17, 2023) (Sterns, J.), 2023 WL 2072429 ("*MWRA*") (citing *Blackstone,* 32 F.4th at 108; *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61 (1987).

The Revere Facility ceased operations in October 2024. With EPA's termination of the Revere Permit in May 2025, Global has unequivocally complied with the Order's requirement to permanently cease all discharges at the facility. Because these actions were required by an enforcement order, the realistic prospect standard applies. *City of Dallas*, 529 F.3d at 528 (citing *Gwaltney* 484 U.S. at 60; *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)). There has not been a single alleged effluent limitation violation at the Revere Facility in at least seven months. Nor could there be when all discharges ceased in October 2024. With the Revere

Permit now terminated and the site transferred to a new owner unaffiliated with Global, there is no way Global can discharge at the facility, let alone commit an alleged future violation.[10]

This analysis applies equally to Counts II and III of the Amended Complaint. Global has no ability to set control measures, BMPs, SWPPPs or anything else at the facility and therefore cannot violate any related requirements (Count II). So too with the sampling, monitoring, and monitoring requirements (Count III). See *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996) ("[S]tanding to sue for reporting violation[s] depends upon . . . standing to sue for discharge violations."). In short, the Order has resolved everything.

There are additional reasons why the monitoring violations should be dismissed. As noted above, the vast majority of the allegations relate to alleged "failures" to collect samples from the Revere Facility's outfalls. But these are simply the result of no stormwater flows running through the applicable outfall during the reporting period. Henderson Decl., ¶¶ 8-9, 11. They are not violations. And many of the other alleged violations relate to the MA0003425 permit that ended in December 2022, including provisions that have not applied since then. See, e.g., *id.* at ¶ 10. Notably, EPA did not reference these so-called violations in the Order or termination proceedings for the Revere Permit. Even with the permissive standard at the motion-to-dismiss stage, this is a strong indication that CLF is mistaken.

---

[10] Even if the court were to apply the standard applicable to voluntary conduct, requiring the defendant to show that it is "absolutely clear" that the violations are not reasonably likely to reoccur, Global would meet this standard because the permit has been terminated. *Friends of the Earth, Inc v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); see also *Coastal Envtl. Rights Found. v. Naples Rest. Group*, 115 F.4th 1217, 1223 (9th Cir. 2024).

B.    *The Chelsea Facility claims are moot because Chelsea Sandwich has complied with an EPA compliance order that resolved the alleged violations.*

The Chelsea Facility claims are also moot. The Newterra System was installed by April 22, 2025, and has been operating for the past five weeks. In the five sampling events taken so far, all contaminants covered by the Chelsea Permit and the Order, including those at issue in the Amended Complaint, are at non-detect or below permit requirements. See Henderson Decl., ¶¶ 12-17, Exs. E-J. The realistic prospect test "considers whether violations will 'continue' in the sense that the violations will not be cured even after the remedial plan imposed . . . has been fully implemented in accordance with reasonable timetables." See *City of Dallas*, 529 F.3d at 530. Global has exceeded that standard. Because of the demonstrated success of the Newterra System, CLF cannot show a realistic prospect that the alleged violations will continue. Counts I and II pertaining to the Chelsea Facility should therefore be dismissed.

As for Count III, CLF also cannot prevail on the sole alleged monitoring violation at the Chelsea Facility (Am. Compl., ¶ 298), which relates to one sampling event on a single day. Henderson Decl., ¶ 7. One violation is not a realistic prospect of ongoing violations. See, e.g., *Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 397 (5th Cir. 1985) (dismissing complaint because it alleged only a single past discharge, not a continuing discharge); *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 900 F.Supp. 67, 82 (E.D. Texas 1995) (one alleged monitoring violation does not confer standing).

C.    *CLF's demand for penalties should also be dismissed.*

Because of Global's extensive engagement with EPA regarding the permit requirements and full compliance with the Order, CLF cannot show any deterrence value in seeking penalties EPA declined to assess. "The Clean Water Act never intended to supply an angry citizen plaintiff with a means to gain revenge . . . ." *MWRA*, 2023 WL 2072429 at *2 (quoting Jonathan S.

Campbell, *Has the Citizen Suit Provision of the Clean Water Act Exceeded its Supplemental Birth?*, 24 Wm. & Mary Envtl. K. & Pol'y Rev. 305, 335 (2000)). A "citizen group answerable only to its own members" may not override "the EPA Administrator[,] a politically appointed official answerable to the President, Congress, and the public for his or her actions (or inactions) . . . ." *Id.* at *4; *Comfort Lake Ass'n, Inc.* 138 F.3d at 357; *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir. 2004) (Clean Water Act "permit[s] citizens to act where the EPA has 'failed' to do so, not where the EPA has acted but has not acted aggressively enough in the citizens' view") (citing *Gwaltney* and *Comfort Lake*). Whether or not EPA assessed a penalty as part of its enforcement action has no bearing on the mootness analysis. "[W]hen Clean Water Act violations aren't reasonably expected to recur, civil penalties lose their deterrent effect and they no longer remediate a citizen plaintiff's injury, which means the citizen plaintiff no longer has a cognizable interest under Article III." *Coastal Env't Rights Found. v. Naples Rest. Group*, 115 F.4th 1217, 1228 (9th Cir. 2024).

*Naples* is especially instructive. There, the Ninth Circuit found that a citizen suit was moot under the more stringent voluntary mootness standard set in *Laidlaw* when the discharger restaurant obtained a permit for the discharges. No penalty was paid for the prior discharges. In analyzing the plaintiff's deterrence argument, the Ninth Circuit found that the analysis and possibility of deterrence only applied to the alleged violations at issue, not the larger actions of the restaurant generally. *Id.* at 1229. Thus, the Ninth Circuit held that the plaintiff's claim was moot because the restaurant's "acquisition of a permit makes it clear that this violation is not reasonably expected to recur." *Id.* In reaching its holding, the court explicitly rejected the theory that there remained deterrence value to prevent future violations. See *id.*

There is no prospect that the alleged violations will reoccur at either facility. Indeed, CLF all but conceded this point at oral argument on the First Motion when their entire focus was on a separate facility located on Eastern Avenue in Chelsea ("Eastern Ave Facility").[11] That facility is not the subject of this lawsuit, and CLF has not alleged any violations there in either complaint. The Eastern Ave Facility is a distinct and separate facility and its operations are unrelated to those at the Chelsea Facility or the former Revere Facility. Charron Decl., ¶ 15. CLF cannot pursue penalties under the guise of general deterrence against a totally separate facility for violations not alleged and for which it has not shown injury. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 108-109 (1998); *Dubois v. U.S. Dep't of Agric.*, 20 F.Supp.2d 263, 268 n.6 (D.N.H 1998)).[12] All of CLF's claims encompassed by this lawsuit were addressed by the Order, as acknowledged by EPA, and Global has fulfilled its obligations under the Order to the letter.[13] The Revere Facility is closed and the Revere Permit has been terminated, thus there is no deterrent effect in levying any penalties related to claims against that facility. See *San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1160 (9th Cir. 2002) (confirming that permanently closing the facility at issue can negate deterrent effect of civil penalties). At the Chelsea Facility, in turn, the Newterra System is in place and operating effectively to ensure

---

[11] Global purchased the Eastern Ave Facility from Gulf in April 2024 as part of a multi-terminal sale. Charron Decl., ¶ 13. The decision to purchase the Eastern Ave Facility and close the Revere Facility are unrelated.  *Id.* at ¶ 14.

[12] *Laidlaw* did not purport to overrule *Steel Co.* Rather, the *Laidlaw* Court reasoned that *Steel Co.*'s redressability holding applied only when plaintiffs sought penalties relating to past harm. *Laidlaw*, 528 U.S. at 187-88.

[13] Except the sole pH exceedance alleged at the Chelsea Facility, which as discussed above, is insufficient to create a realistic prospect of ongoing violations. See *Hamker*, 756 F.2d at 397.

continued compliance with the Chelsea Permit. The Eastern Ave Facility (or anywhere else) is irrelevant. *See Naples Rest. Group*, 115 F.4th at 1227-28.

In sum, EPA's enforcement action has proven effective, and there is no deterrence value in assessing penalties against a permittee who has met their permit and compliance obligations consistent with that action. The declaratory, injunctive, and monetary claims for relief related to each facility, including the alleged monitoring and narrative violations and requested penalties, should therefore be dismissed.

## CONCLUSION

For these reasons, Defendants request that CLF's Amended Complaint be dismissed.

> **Chelsea Sandwich LLC and**
> **Global Companies LLC,**
>
> By their attorneys,
>
> */s/Matthew J. Connolly*
> Matthew J. Connolly (BBO# 676954)
> mconnolly@nutter.com
> Joseph P. Jannetty (BBO#713244)
> jjannetty@nutter.com
> Alexander O. Eddinger (BBO#707134)
> aeddinger@nutter.com
> Nutter, McClennen & Fish, LLP
> Seaport West, 155 Seaport Blvd.
> Boston, Massachusetts 02210
> Telephone:    (617) 439-2000

Dated: May 29, 2025                     Facsimile:    (617) 310-9000

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew J. Connolly, hereby certify that on May 29, 2025, the foregoing document

was submitted for filing through the ECF system. The document will be sent electronically to the

registered participants, and paper copies will be served via first class mail on those who have

appeared and are indicated as non-registered participants.

*/s/ Matthew J. Connolly*
Matthew J. Connolly

7261950