# EXHIBIT 1

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| WASTE ACTION PROJECT, | Case No. 21-cv-00443-RAJ |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| GIRARD RESOURCES & RECYCLING, LLC, | |
| Defendant. | |

## I.    INTRODUCTION

THIS MATTER is before the Court on Defendant Girard Resources & Recycling's ("GRR") Motion to Dismiss, Dkt. # 181, and Motion for Reconsideration, Dkt. # 183. Plaintiff Waste Action Project ("WAP") opposes dismissal. Dkt. # 186. The Court has reviewed the motions, the materials filed in support of the motions, the balance of the record, and the governing law. For the reasons set forth below, the Court DENIES Defendant's Motions. Dkts. # 181, 183.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## II.    BACKGROUND

The Court adopted Judge Leupold's Report and Recommendation on Defendant's Motion for Summary Judgment (the "R&R"), Dkt. # 173, in its entirety.  Dkt. # 178.  The Court concluded that Defendant GRR indisputably violated the Clean Water Act ("CWA").  Below, the Court summarizes the pertinent facts and the R&R's findings.

### A.    Regulatory Background

Congress enacted the CWA in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). "A cornerstone of the [CWA] is that the 'discharge of any pollutant' from a 'point source' into navigable waters of the United States is unlawful[.]" *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc*., 299 F.3d 1007, 1009 (9th Cir. 2002) (quoting 33 U.S.C. §§ 1311(a)).  However, a person or company may obtain a National Pollutant Discharge Elimination System ("NPDES") permit—which both authorizes and regulates the discharge of pollutants—from either the Environmental Protection Agency ("EPA") or an approved state agency.  *Id*.; 33 U.S.C. § 1342.  The CWA requires NPDES permits for stormwater discharges "associated with industrial activity." *Puget Soundkeeper All. v. Rainier Petroleum Corp*., No. 14-cv-0829, 2015 WL 13655379, at *2 (W.D. Wash. Dec. 16, 2015) (citing 33 U.S.C. § 1342(p); 40 C.F.R. § 122.26).

In Washington State, the Department of Ecology ("Ecology") is responsible for administering the CWA's NPDES program. *Ass'n to Protect Hammersley*, 299 F.3d at 1009–10; 33 U.S.C. § 1342(b); Wash. Rev. Code § 90.48.260.  Ecology implements the CWA's NPDES program through the issuance of "general permits." *Env't Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 853 (9th Cir. 2003).  "A general permit is a tool by which EPA regulates a large number of similar dischargers" by identifying "the output limitations

1  and technology-based requirements necessary to adequately protect water quality from a

2  class of dischargers." *Id.*

3      Relevant to this case is Ecology's Industrial Stormwater General Permit ("ISGP").

4  Dkt. # 14-4.  The ISGP requires the permit holder to establish a facility-specific

5  Stormwater Pollution Prevention Plan ("SWPPP"), implement stormwater best

6  management practices ("BMPs"), and collect, analyze, and report samples of stormwater

7  discharge at designated discharge points.  *Id.* at 6–7; Dkt. # 14-4.

8      **B.    The Facility**

9      Starting in 2016, Defendant leased an approximately four-acre property from the

10  City of Snoqualmie in Snoqualmie, Washington, where Defendant operated a material

11  recovery and recycling facility (the "Facility").  Dkt. # 165 at 2; Dkt. # 167 at 1.[1]  There,

12  Defendant processed waste concrete from construction projects and used street sweeping

13  wastes from the City of Snoqualmie to create compost.  Dkt. # 155 at 3; Dkt. # 165 at 3.

14  These wastes, along with recycled products resold to the public for landscaping and

15  construction, were stored on-site at the Facility.  Dkt. # 149-10 at 37–40; Dkt. # 150-2 at

16  11–12.  The Facility sits above and adjacent to a creek that flows into the Snoqualmie

17  River across the street.  *Id.* at 48–49; Dkt. # 149-3 at 14–15; Dkt. # 149-9 at 166.  As

18  discussed in more detail *infra* Section II.E, Defendant no longer leases or operates the

19  Facility.

20      **C.    Pre-Permit Claims**

21      The parties do not dispute that GRR did not have ISGP coverage until March 2,

22  2023.  *See* Dkt. # 164 at 5; Dkt. # 149 at 20.  Plaintiff alleges that Defendant discharged

23  a pollutant from the Facility without NPDES permit authorization at least 29 times—

24

25  _____

26  [1] Although GRR's lease for the Facility started in 2016, its first association with the Facility was in 2011. *See* Dkt. # 165 at 1. Under a State Waste Discharge Permit, GRR used the Facility as a cementitious slurry operation in June 2012. *Id.* at 2.

once per calendar quarter between February 1, 2016, and March 2, 2023, when Defendant obtained ISGP coverage.  Dkt. # 149 at 11.

In the adopted R&R, the Court found there was "no genuine dispute of material fact that Defendant has discharged a pollutant (stormwater associated with industrial activities) to Waters of the United States." Dkt. # 173 at 30.  Further, for the pre-permit claims, there was "no genuine issue of material fact that Defendant violated the CWA 29 times by discharging pollutants without a permit once per calendar quarter, from February 1, 2016, until it obtained ISGP coverage on March 2, 2023." *Id*. at 31.

### D.    Post-Permit Claims

Defendant obtained an ISGP on March 2, 2023. Dkt. # 158 at 9.  Plaintiff alleges that Defendant has since violated the terms of its ISGP. Dkt. # 149 at 20–36.

#### 1.    SWPP Deficiencies

GRR prepared an SWPPP on July 20, 2023 (the "First SWPPP").  Dkt. # 159 at 8–213.  Defendant updated its SWPPP on December 8, 2023 (the "Second SWPPP"). Dkt. # 150-2.  Plaintiff alleges three categories of violations based on Defendant's failure to develop and incorporate an SWPPP compliant with the ISGP's requirements.  Dkt. # 149 at 20–27.   Plaintiff depicts a timeline of three categories of violations.

In the R&R, the Court concluded there were various SWPPP deficiencies. First, the Court found that Defendant violated its ISGP obligations, and by extension the CWA, because GRR "ISGP requires Defendant to implement a compliant SWPPP immediately upon coverage" and GRR "did not have an SWPPP for 138 days between March 3, 2023, and July 19, 2023." *Id.* at 32.   Next, the Court found, GRR's First SWPPP contained a faulty site map in violation of the ISGPA and CWA, and therefore "Defendant violated the CWA once for each of the 140 days the First SWPPP remained in effect." *Id*. at 34. Lastly, the Court determined Defendant violated the CWA once for each day (203 days)

the Second SWPPP remained in effect prior to Plaintiff's Motion for Partial Summary Judgment. *Id*. at 36.

### 2. Slurry Processing Embankment

Plaintiff alleges several ISGP violations with respect to the "slurry processing embankment." Dkt. # 149 at 28–33. This embankment sits above the stream that borders the Facility and flows into the Snoqualmie River, and, according to Plaintiff, is treated "as an extension of its slurry processing area," where workers process slurry-related solids from a containment area and store slurry processing equipment. *Id*. at 28–29. Plaintiff alleges that Defendant has failed to implement its ISGP on the embankment, resulting in SWPPP, BMP, and monitoring and sampling violations.

In the R&R, the Court found because there was no dispute of material fact, the Court found "a total of 492 violations of the CWA related to the slurry processing embankment." *Id*. at 37.

### 3. BMP Deficiencies

Plaintiff asserts that Defendant has failed to incorporate certain BMPs required by its ISGP. Dkt. # 149 at 33. These include BMPs for erosion and sediment control, storm-resistant lidded dumpsters, track-out caused by trucks leaving the Facility, the prevention of highly turbid discharges, and solid waste handling and dumping. *Id*. at 33–36.

In the R&R, Defendant indisputably violated the CWA once for each day after it obtained its ISGP on March 2, 2023, and did not incorporate: (1) Erosion and sediment control BMPs until June 5, 2023 (94 days); (2) BMPs preventing the use of slurry water as a dust suppressant until June 5, 2023 (94 days); (3) BMPs to keep dumpsters under cover or fit with a storm-resistant lid until July 24, 2023 (143 days); (4) BMPs to prevent track-out until Plaintiff filed the present Motion on June 28, 2024 (483 days); and (5) BMPs to prevent a single discharge of highly turbid water (1 day). Dkt. # 173 at 40; *see*

1  *also* Dkt. # 178.

2

3  **E.    Terminating Lease and Permit**

4      On April 9, 2024, despite attempts to renew the lease, The City of Snoqualmie

5  terminated Defendant's lease.  Dkt. # 150-15.  The City allowed Defendant sixty days to

6  vacate the premises and comply with its ISGP obligations. *See id*.

7      On August 23, 2024, GRR filed a Notice of Termination of its ISP with Ecology,

8  indicating that it ended all operations at the Facility and stating that "operation and

9  equipment [sic] has all been removed from the site and no further discharge will take

10  place." Dkt. # 182 at 5–6.  On September 4, 2024, representatives from Ecology visited

11  the Facility and recommended the termination of the ISGP and the approval of the Notice

12  of Termination.  *See id*. at 8–10.  On October 3, 2024, Ecology terminated the ISGP

13  permit as of August 28, 2024.  *See id*. at 12–13.

14  **F.    Relevant Procedural History**

15      This Court reviewed the record, the R&R, and Defendant's Objections to the

16  R&R, before adopting the R&R in its entirety. Dkt. # 178.  The Court denied Defendant's

17  Motion for Summary Judgment, finding that Plaintiff established standing, and the Court

18  had subject matter jurisdiction over this matter.  *See* Dkt. # 173 at 13–25; Dkt. # 178.

19      On October 11, 2024, Defendant filed a Motion to Dismiss for Lack of

20  Jurisdiction, Dkt. # 181, and a Motion for Reconsideration, Dkt. # 183.  WAP opposes

21  dismissal.  Dkt. # 186.  The Court reviews the parties' arguments below.  The Court first

22  resolves the motion for reconsideration, and then considers the motion to dismiss.

23  **III.    MOTION FOR RECONSIDERATION**

24      In GRR's Motion for Reconsideration, Defendant makes two arguments.  First,

25  GRR argues that the Court should reconsider its order adopting the R&R.  *See* Dkt. # 183

26  at 2–5.  Second, GRR asks the Court to certify judgment on the jurisdictional issues

decided at summary judgment.  *See id*. 6–8.  For the reasons set forth below, the Court denies GRR's Motion for Reconsideration in its entirety.

### A.  Reconsideration of Adopting the R&R

Defendant GRR argues that reconsideration is appropriate because "the Court signed a boilerplate Order drafted by the Magistrate that contains no language indicating that the Court conducted a de novo review of the record." *See id.* at 5.  GRR contends that the district court should make an "independent written analysis and findings in light of objections to a magistrate's R&R." *See id*.

Under Local Rule 7(h), motions for reconsideration are disfavored.  Courts will ordinarily deny such motions in the absence of "manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence."  Local R. W.D. Wash. ("LCR") 7(h)(1).  Manifest error is very nearly synonymous with "clear error" under Ninth Circuit precedent. *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (explaining that "[r]econsideration is appropriate" if "the district court committed clear error or the initial decision was manifestly unjust").

Defendant's position is unavailing.  No authority compels a district court to make an independent written analysis in light of a party's objections to a magistrate's R&R.  Further, a district court is not required to explicitly use the term "de novo" or any other language that indicates the Court conducted de novo review when adopting a magistrate judge's R&R. *See, e.g.*, *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1450 (9th Cir. 1986) (presuming that a district court conducted de novo review when it indicated that it reviewed the R&R and the record, even though it did not explicitly use the term "de novo"); *Weller v. Haynes*, No. 23-35459, 2024 WL 4119372, at *2 (9th Cir. Sept. 9, 2024) (finding that a district court's order adopting the magistrate judge's R&R

"was sufficient to satisfy its obligation to conduct de novo review" even though "the district court did not explicitly indicate the standard of review it used").

Reconsideration is not warranted in this matter. The Court appropriately conducted de novo review of the record before adopting the R&R. Additionally, Defendant does not provide any additional bases that are considered under LCR 7(h)(1) that support granting reconsideration here. Accordingly, the Court denies GRR's Motion for Reconsideration.

## B.   Certification of Jurisdictional Issues

Defendant asserts that the Court should certify judgment on five "jurisdictional issues decided by the R&R" for immediate appellate review. Dkt. # 183 at 6.[2]   Plaintiff asserts that certification is not appropriate because certification would lead to "very scattershot, piecemeal appeals . . . without sufficient justification." Dkt. # 184 at 3.

Federal Rule of Civil Procedure 54(b) permits entry of judgment on less than all of the claims in a case before all claims have been resolved if there is "no just reason for delay." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 877 (9th Cir. 2005) (quoting Fed. R. Civ. P. 54(b)). District courts undertake a two-step process when applying Rule 54(b). *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). First, a district court must "determine that it is dealing with a 'final judgment.'" *Id.* at 7. "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* (internal quotation omitted). Second, the Court "must determine whether there is any just reason for delay." *Wood*, 422 F.3d at 878.

---

[2] GRR lists five jurisdictional issues that it seeks to certify which will not rise until final judgment and would be dispositive of the case: 1) whether WAP has standing due to membership; 2) whether WAP's standee has suffered an injury in fact; 3) whether WAP's allegations are fairly traceable to GRR; 4) whether WAP's Amended Complaint fails to invoke the district court's jurisdiction; and 5) whether GRR discharges stormwater to any Waters of the United States. *See* Dkt. # 183 at 7.

ORDER - 8

The decision "is left to the sound judicial discretion of the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal." *Curtis-Wright*, 466 U.S. at 8. The Ninth Circuit embraces a "pragmatic approach focusing on severability and efficient judicial administration." *Wood*, 422 F.3d at 880; *see Gausvik v. Perez*, 392 F.3d 1006, 1009, n.2 (9th Cir. 2004) ("[I]n the interest of judicial economy Rule 54(b) should be used sparingly."). This approach includes the "effort to streamline litigation by narrowing the issues for trial, [thus] efficiently separat[ing] the legal from the factual questions." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991). Whether a final decision on a claim is ready for appeal is a different inquiry from the equities involved because the "consideration of judicial administrative interests is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals." *Curtis-Wright*, 466 U.S. at 8.

The Court first observes that denial of summary judgment on jurisdictional issues is a partial, final judgment in this case; however, GRR has not persuaded this Court that Rule 54(b) certification is appropriate here. Entering partial, final judgment on the jurisdictional issues at this juncture would not narrow the issues, shorten the length of the trial, or help streamline a complex case. *Cf. Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) (affirming a partial judgment under Rule 54(b) where it "effectively narrowed the issues, shortened any subsequent trial by months"). This is not the type of case in which the issues or parties are severable such that the district court proceedings could continue while separate issues are resolved on appeal. Instead, certification of these issues would delay already protracted litigation that started in 2021. *See Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 625, 628 (9th Cir. 2015) (noting that Rule 54(b) certification is inappropriate where it is "more likely to cause

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

additional delay than it is to ameliorate delay problems" and where "interlocutory appeal would only prolong final resolution of the case"); *Curtiss-Wright Corp.*, 446 U.S. at 8 n.2 (stating that "where any of the factors pertaining to judicial administration point against certification, the court should not enter partial, final judgment"). Accordingly, the Court, in its sound discretion, denies GRR's request enter final partial judgment and certify these issues for appeal.

## IV.   SUBJECT MATTER JURISDICTION

Defendant GRR's Motion to Dismiss argues this Court lacks jurisdiction to hear this case. Dkt. # 181. Defendant points to the Ninth Circuit's recent ruling in *Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217, 1220 (9th Cir. 2024) ("*Naples*") and argues that Plaintiff lacks the injury-in-fact required for standing. *See id*. Defendant contends that its closure of the Facility eliminates any ongoing unlawful conduct injuring Plaintiff, and thus this case is moot. *See id*. at 2. Accordingly, Defendant asserts this Court lacks subject matter jurisdiction.

Plaintiff opposes dismissal and asserts Defendant's Motion should be treated as a motion for summary judgment. *See generally* Dkt. # 186. Plaintiff argues that "[t]he undisputed patten of [GRR's] Clean Water Act violations for over a decade" undermines dismissing the case as moot. *See id*. at 7. Plaintiff maintains that a material factual dispute remains to whether GRR is committing ongoing CWA violations for materials deposited and remaining at the Facility, even though Defendant no longer rents or conducts industrial activities there. *See generally id*. Plaintiff asserts that the *Naples* decision is distinguishable from the instant case and is "only relevant upon a finding that civil penalties are the only remaining relief available." *See id*. at 16.

ORDER - 10

## A.      Standard of Review

Although Defendant does not cite a rule for its Motion, Defendant argues that Plaintiff's lack of injury (1) deprives it of standing under Article III and (2) precludes recovery under the Clean Water Act ("CWA").  *See* Dkt. # 181 at 6, 11.  Accordingly, the Motion falls under both Rules 12(b)(1) and 12(b)(6).  *See, e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (noting a "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)"); *REX - Real Est. Exch., Inc. v. Zillow, Inc.*, No. 21-cv-312, 2022 WL 1203742, at *3 (W.D. Wash. Apr. 22, 2022) (analyzing injury for Article III standing under Rule 12(b)(1) but for Lanham Act standing under Rule 12(b)(6)).  When resolving a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Mosteiro v. Simmons*, No. 19-cv-00593, 2022 WL 891160, at *2 (E.D. Cal. Mar. 25, 2022) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

Defendant's Motion relies on facts outside of the pleadings—namely, documents indicating that Defendant shut down the Facility, terminated its leases and permits, and removed all equipment.  Dkt. # 182.  Defendant's Motion relies on a Declaration from Riley Carr, Defendant's employee, that certifies Defendant has terminated operations at the Facility and attaches several supporting documents, including: 1) a Notice of Termination of Defendant's ISGP; 2) documents from Ecology approving the ISGP termination; and 3) documents from Ecology approving the termination of Defendant's State Waste Discharge ("SWD") Permit.[3]  *See* Dkt. # 182; Dkt. # 181 at 5, n.26.  All of these documents were created between August and October of 2024.  Dkt. # 182.  None

---

[3] Although Defendant attaches the SWD permit, this permit was not at issue in this lawsuit.

of these documents were attached to, or referenced by, Plaintiff's Amended Complaint, filed on July 24, 2023. Dkt. # 66. Additionally, Defendant has not argued that the documents should be considered via judicial notice, nor has Defendant contested Plaintiff's argument that the Motion should be converted. *See* Dkt. # 186 at 5; Dkt. # 190.

The Court finds that it is appropriate to consider Defendant's Motion as summary judgment motion. Here, the record is fully developed, the parties rely on material outside of the Complaint, and the parties do not ask for the Court to take judicial notice. Therefore, the Court converts the Motion to a motion for summary judgment, and accordingly it will apply the summary judgment standard, which is set forth below.

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248–49).

**B.    Analysis**

In order to determine whether GRR is liable under the CWA, the Court must determine the nature of the CWA violations. First, the Court addresses whether there is a genuine dispute that GRR is committing ongoing CWA violations. The Court then analyzes the legal question of whether Defendant can be held liable under the CWA under the circumstances in this case. Lastly, the Court examines whether the violations can be

considered "wholly past" such that it is "absolutely clear" that violations could not be reasonably expected to recur.

### 1. Ongoing CWA Violations

Plaintiff asserts that Defendant's violations are ongoing because GRR prematurely terminated its NPDES permit at the Facility even though, "significant materials remain and are exposed to storm water" in "areas where [GRR's] industrial activity has taken place in the past." Dkt. # 186 at 8.   Plaintiff asserts several facts it believes indicate liability for ongoing CWA violations. *See id*. at 8–10.  First, Plaintiff argues GRR left industrial waste and materials at the Facility, which remain exposed to stormwater including: (a) crushed concrete; (b) "ecology blocks" likely used for Defendant's slurry containment;(c) accumulated heavy metals and other metals that have built up on the site, including on the slurry embankment; and (d) accumulated pollutants in a settling pond.  Dkt. # 186 at 8.  Next, Plaintiff contends that GRR's discharge monitoring data showed sufficient permit benchmark exceedances to trigger "the most stringent corrective actions under the ISGP (Level Three), requiring Girard to install sitewide stormwater treatment."  *Id*. at 9 (citing Dkt. # 187–3).  Further, Plaintiff also asks the Court to consider that it is in the process of appealing Ecology's termination of Defendant's ISGP, asserting the termination was "arbitrary and flawed because of the significant materials and pollutants remaining onsite that are exposed to stormwater" and argues that "the outcome of the appeal may reinstate Girard's ISGP coverage."  *Id*. at 9–10.

Defendant disputes this evidence, arguing that it has removed all waste from the site.  Dkt. # 181 at 5 (citing Dkt. # 182).  Defendant maintains that any material remaining

1    at the Facility belongs to the City of Snoqualmie. *See* Dkt. # 190 at 9 (citing Dkt. # 192).[4]

2    Additionally, Defendant argues that Ecology inspected the Facility and determined GRR

3    was no longer required to maintain a permit, which relieves it from any continuing

4    violation liability. *See* Dkt. # 182 at 8–12; Dkt. # 192 at 14–16.

5        An ongoing violation may be proven by showing that either (1) the violations

6    continued on or after the date the complaint was filed, or (2) there is evidence from which

7    a reasonable trier of fact could find "a continuing likelihood of a recurrence in

8    intermittent or sporadic violations." *Sierra Club v. Union Oil Co.*, 853 F.2d 667, 671

9    (9th Cir. 1988) (internal quotation marks omitted). Further, "[i]ntermittent or sporadic

10   violations do not cease to be ongoing until the date when there is no real likelihood of

11   repetition." *Id.* (internal citations and quotations omitted). As long as the plaintiff makes

12   a good faith allegation of continuous or intermittent violations, federal jurisdiction under

13   the CWA attaches. *See Gwaltney*, 484 U.S. at 64–65.

14       A federal court is not required to defer to a state agency's factual determination of

15   environmental issues, such as Ecology's determination here. At most, relevant caselaw

16   suggests a court may grant limited deference to Ecology's factual determinations

17   underlying its decision to terminate GRR's NPDES permit. *See, e.g.*, *Arizona v. City of*

18   *Tucson,* 761 F.3d 1005, 1014 (9th Cir. 2014) (noting state agencies with environmental

19   expertise are entitled to "some deference" on questions concerning their area of

20   expertise); *Nw. Env't Def. Ctr. v. Cascade Kelly Holdings LLC*, 155 F. Supp. 3d 1100,

21

---

22   [4] Defendant introduced the argument and evidence of the alleged material effect of Snoqualmie's possession of the remaining material at the Facility for the first time in its reply, meaning that this

23   argument was likely waived. *See Zango, Inc. v. Kaspersky Lab, Inc*., 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived."); *Zamani v. Carnes*, 491 F.3d

24   990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.") (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003); *see, e.g.*, *Dolan v. Sentry*

25   *Credit, Inc*., No. 17-cv-1632, 2018 WL 6604212, at *5 (W.D. Wash. Dec. 17, 2018) (noting waiver of argument where evidence was only raised in reply briefing). This information was available in September

26   2024 before Defendant's motions were filed, which also supports waiver.

ORDER - 14

1125 (D. Or. 2015) (giving "some deference" to an Oregon agency's factual determination under the Clean Air Act that a permit was not required); *but see N. Plains Res. Council v. Fidelity Expl. & Dev. Co.*, 325 F.3d 1155, 1164 (9th Cir. 2003) (observing "Montana has no authority to create a permit exemption from the CWA for discharges that would otherwise be subject to the NPDES permitting process"). Yet, some courts evaluate an agency's factual findings independently, especially when the record lacks substantial reasoning or the findings appear arbitrary. *See e.g.*, *Columbia Riverkeeper v. Port of Longview*, No. 20-cv-5981, 2021 WL 5232174, at *2 (W.D. Wash. Nov. 10, 2021) (considering an inspector's report as evidence of defendant's compliance with the CWA but declining to defer to  an inspector's report because it was "not Ecology's interpretation of a permit or a regulation" and was not  "a deliberated decision"); *Ass'n to Protect Hammersley*, 299 F.3d at 1012  (stating that Ecology's decision that "an NPDES permit is not needed warrants consideration but does not divest the federal courts of jurisdiction.").

The contents of Ecology's report do not contain sufficient information for it to reflect a "deliberated decision" that warrants a court's deference.  The ISGP termination report is a three-page document with limited reasoning and information. *See* Dkt. # 182, Ex. B.  The report indicates the findings are based on a thirty-minute inspection with a walkthrough of the Facility. *See id.*  Accordingly, based on a review of Ecology's report, Court considers it as evidence, but it will not defer to the factual findings.

Even considering Ecology's report, the evidence provided by Plaintiff demonstrates there is significant industrial waste at the Facility after Defendant vacated. *See* Dkt. # 188.  This is sufficient to create a dispute of material fact as to whether stormwater discharges associated with GRR's industrial activity continue at the Facility.

1  Accordingly, the Court finds, as it did in the R&R, that there is a material dispute of fact

2  of whether stormwater discharges continue at the Facility.

3           **2. Liability for Ongoing CWA Violations**

4          The Court must also determine whether Defendant can be liable for ongoing CWA

5  discharges under the circumstances in this case.  Accordingly, the Court must decide

6  whether GRR "discharges stormwater associated with industrial activity" under the CWA

7  after terminating its lease and ISGP coverage, with no intent to return, solely because it

8  previously conducted industrial activity and left exposed materials onsite.

9          Plaintiff's argument points to the state's ISGP definitions, *see* Dkt. # 186 at 8,

10  which requires permit coverage for "[a]ny inactive facility which is listed under 40 CFR

11  §122.26(b)(14) where significant materials remain onsite and are exposed to

12  stormwater[.]"  Dkt. # 14-4 at 14.  Defendant observes that "cessation of activity that

13  violates the CWA does not itself deprive a court of jurisdiction," but argues the CWA

14  "does not apply where there is no facility, no industrial activity and no discharger."  Dkt.

15  # 190 at 8.

16          The CWA and ISGP definitions do not contain an explicit temporal limitation on

17  stormwater discharges.  The EPA's regulation of discharges of stormwater inclusion of

18  areas "where industrial activity has taken place in the past and significant materials

19  remain," 40 C.F.R. § 122.26(b)(14), explicitly contemplates that a "discharge" may occur

20  after the operator has ceased industrial activity, when new stormwater carries away old

21  materials.  In such a scenario, the ISGP's definitions of "discharger" and "operator"

22  indicate that the person who deposited those materials may be categorized as both.  *See*

23  Dkt. # 14-4 at 68.  Further, the CWA flatly prohibits the discharge of any pollutant unless

24  an exception, such as an NPDES permit like the ISGP here, applies.  33 U.S.C. §1251 *et*

25

26

*seq.*  The relevant CWA provision is silent as to temporal limits on discharge activity that may give rise to liability.  33 U.S.C. § 1311(a).

"[A] discharge of pollutants is ongoing if the pollutants continue to reach navigable waters, even if the discharger is no longer adding pollutants to the point source itself."  *Umatilla Waterquality Protective Ass'n, Inc. v. Smith Frozen Foods, Inc*., 962 F. Supp. 1312, 1322 (D. Or. 1997).  A discharger of pollutants may be held liable under the CWA if "the risk of continued violation has not been eradicated."  *Id.*  (citing *Sierra Club*, 853 F.2d at 671); *see also McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 330–31 (9th Cir. 1995) (noting that the fact that pollutants came from inactive pits was not dispositive of the action); *San Francisco Herring Ass'n v. Pac. Gas & Elec. Co*., 81 F. Supp. 3d 847, 860 (N.D. Cal. 2015) (allegations of residual contamination from activities conducted "between 84 and 106 years ago" were sufficient to withstand a motion to dismiss and "factual in nature"); *Werlein v. United States*, 746 F. Supp. 887, 896–97 (D. Minn. 1990), *class cert. vacated* 793 F. Supp. 898 (D. Minn. 1992) (holding that when toxic waste migrates to a waterway over time, there is ongoing pollution of that waterway for CWA purposes, even though all of the contaminants were dumped years before).

Courts have found that an entity may "discharge" unlawfully, even when they do not currently own or conduct industrial activities in the area from which the discharge occur.  *San Francisco Baykeeper v. W. Bay Sanitary Dist*., 791 F. Supp. 2d 719, 771 (N.D. Cal. 2011) ("dischargers are not insulated from liability merely because they make illegal discharges via a system owned and operated by other entities [. . .] the fact that defendant may discharge through conveyances owned by another party does not remove defendant's actions from the scope of [the CWA].") (internal quotations omitted)); *Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 933 (C.D. Cal. 2023)

ORDER - 17

("The weight of authority among the district courts suggests entities other than permitholders can be held responsible for violations of the effluent standards and limitations specified in the General Permit."); *Puget Soundkeeper All. v. Cruise Terminals of Am., LLC*, 216 F. Supp. 3d 1198, 1223, 1225 (W.D. Wash. 2015) (stating "the CWA imposes liability both on the party who actually performed the work and on the party with responsibility for or control over performance of the work" and that multiple parties can be held responsible under the CWA).

The Court finds that CWA liability may attach when a person discharges pollutants when stormwater discharges from an area (1) where that person previously conducted industrial activity and (2) where significant materials exposed to stormwater—even if that person no longer owns that property or conducts industrial activity there. Accordingly, GRR can be held liable for ongoing CWA violations even after it vacated the Facility. Therefore, the Court concludes there is a material factual dispute as to whether GRR is committing ongoing CWA violations via stormwater discharges from areas at the Facility where Defendant previously conducted industrial activity and left significant materials behind.

### 3. "Wholly Past" CWA Violations

The Court has already concluded that GRR's conduct demonstrates an ongoing CWA violation. The Court observes that it addressed similar arguments with respect to wholly past" CWA violations. *See* Dkt. # 173 at 23–25. There, Judge Leupold recommended, and this Court adopted, the finding that in light of Plaintiff's allegations of ongoing CWA violations, "the Court maintains jurisdiction over past SWPPP violations[.]" *See id.* at 24. The Court addresses new facts and recent caselaw Defendant raises in its motion.

ORDER - 18

As discussed below, the Court finds that even if the conduct did not amount to an ongoing violation, this Court maintains jurisdiction over the past violations. The Court first outlines the mootness doctrine for "wholly past" CWA violations, and then summarizes the Ninth Circuit's decision in *Naples*. As explained below, the Court finds that under *Naples*, it is not "absolutely clear" that the violations could not be reasonably expected to recur.

### a.  Mootness for "Wholly Past" CWA Violations

The purpose of the mootness doctrine in CWA cases is to protect defendants "from the maintenance of suit under the [CWA] based solely on violations wholly unconnected to any present or future wrongdoing," while also protecting "plaintiffs from defendants who seek to evade sanction by predictable protestations of repentance and reform." *Gwaltney*, 484 U.S. at 66–67 (emphasis added) (quotations and citations omitted). *Gwaltney* does not bar suits over past CWA violations, so long as the plaintiff also makes good-faith allegations of a "continuous or intermittent violation." *Id.* at 64.

To establish mootness, a defendant must show that the district court cannot order any effective relief. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000); *Sierra Club*, 853 F.2d at 669 ("The burden of proving that the case is moot is on the defendant."). The seminal case analyzing mootness in the context of a CWA citizen suit is *Friends of the Earth v. Laidlaw*, 528 U.S. 167 (2000) ("*Laidlaw*"). In *Laidlaw*, the Supreme Court reversed the Fourth Circuit's holding that a citizen suit seeking civil penalties was moot because the alleged CWA violations had ceased. *Id.* at 174. The Supreme Court noted that the cessation of illegal conduct following the commencement of suit "ordinarily does not suffice to moot a case" because civil penalties still serve as a deterrent to future violations. *Id.*

A sale or abandonment of a property where a CWA violation previously occurred does not make it "absolutely clear" that violations will not reoccur and render a case moot. *See, e.g.*, *San Francisco BayKeeper, Inc. v. Tosco Corp*., 309 F.3d 1153, 1157 (9th Cir. 2002) (finding that defendant's sale of the property did not make it "absolutely clear" that violations would not recur, where the facility was still operating and there was a possibility that violations would recur at the facility because "[a]n imposition of civil penalties against [defendant] for its pollution at the facility will demonstrate to [the buyer] and any future owner that violations at this same facility will be costly.") ("*Tosco*"). When evaluating mootness, courts may consider whether a defendant operates other facilities with similar operations as the polluting facility, such that the civil penalties will have a deterrent effect. *See Wild Fish Conservancy v. Cooke Aquaculture Pac. LLC*, No. 17-cv-1708, 2019 WL 6310660, at *13 (W.D. Wash. Nov. 25, 2019) (noting "[t]he deterrent effect of civil penalties is no less potent when the defendant no longer operates or owns the polluting facility" especially where the defendant operated seven other facilities with NPDES permits). This is because "[a]llowing polluters to escape liability for civil penalties for their past violations" by selling their polluting assets or vacating a polluting facility "would undermine the enforcement mechanisms established by the Clean Water Act." *Tosco,* 309 F.3d at 1160.

### b.  The *Naples* Decision

In *Naples*, the plaintiff alleged that the defendant, a restaurant group, violated the CWA by setting off fireworks that landed in Alamitos Bay during annual fireworks shows for over a decade without a permit. 115 F.4th at 1221. After a bench trial, the district court rendered a verdict for the defendant, finding plaintiff's claims moot because plaintiff was only able to prove that fireworks resulted in a discharge into the Bay during

a single show and, thus, plaintiff failed to show that defendant's violations were likely to recur, making the claims moot. *Id.* at 1220–21.

The plaintiff in *Naples* appealed. After the district court's verdict and while the appeal was pending, the defendant obtained a NPDES permit authorizing its fireworks displays. The Ninth Circuit began by outlining the mootness doctrine as explained in *Gwaltney* and *Laidlaw*. *See id.* 1222–23. After discussing the guideposts, the Ninth Circuit summarized the principles of the cases:

> A few principles emerge from *Gwaltney* and *Laidlaw*. First, the touchstone for civil penalties under the Clean Water Act is deterrence. Civil penalties deter current or future violations—they do not remedy wholly past violations. Second, to establish mootness, the defendant bears a heavy burden to show that it's absolutely clear that past violations could not reasonably be expected to recur. We administer this test stringently. And finally, when there's no reasonable possibility of a future violation, civil penalties lose their deterrent effect and become moot.

*Id.* at 1223. Next, the Court found that the defendant's NPDES permit mooted the plaintiff's claims for relief. *Id.* at 1224.

First, the plaintiff was precluded from seeking injunctive relief because the defendant obtained a permit and could thus no longer violate the CWA with unpermitted discharges. The Court found that the alleged violations were not reasonably likely to recur, reasoning that it would be "too speculative" to think that the defendant would "somehow lose its NPDES permit or let it lapse. Nothing in the record suggests that Naples will stop paying for the annual fee for [the] permit." *Id.* at 1224–25 (internal citations omitted). Here, by obtaining a permit, the defendant showed that the only violation asserted by the plaintiff was not reasonably expected to reoccur.

Second, the Court also found the plaintiff's claims for civil penalties moot. The Court acknowledged that some Circuits have found civil penalties distinct from injunctive relief and that, "even when injunctive relief becomes inappropriate, any request for civil penalties defeats mootness." *Id.* (collecting cases). The Court

distinguished *Naples* from those cases because the allegations in *Naples* related solely to the unpermitted discharge of pollutants, rather than "allegations that the defendant violated an existing NPDES permit, but later came into compliance." *Id*. at 1226.

Importantly, the Court observed that "*Laidlaw* established a mootness standard for Clean Water Act citizen suits that applies both to claims for civil penalties and for injunctive relief." *Id*. at 1227. The Court reasoned that civil penalties help to deter future violations, so "coming into compliance with the Clean Water Act doesn't necessarily extinguish the need for civil penalties." *Id*. But the Court indicated that when it is "absolutely clear" that the CWA violations "could not reasonably be expected to recur," claims for civil penalties lose their deterrent effect and become moot. *Id*. Thus, under *Laidlaw*, even when compliance moots injunctive relief, civil penalties remain available to deter future violations unless it is absolutely clear that the alleged violation could not reasonably be expected to recur. *Id*.

### c. GRR's CWA Violations

From the Court's reading of *Naples*, the Ninth Circuit's decision appears very narrow. The decision endorses *Gwaltney* and *Laidlaw*, and it does not disrupt the existing caselaw analyzing "wholly past" CWA violations. With those principles in mind, the Court analyzes GRR's past CWA violations below to determine if it is "absolutely clear" that further violations are not reasonably expected to recur.

The case before the Court is distinguishable from *Naples* in many ways. In *Naples,* defendant was a restaurant group; here GRR is a company that provides construction material recycling services. 115 F.4th at 1120. The unlawful conduct at issue in *Naples* concerned a malfunction in an annual firework show causing a discharge of a pollutant into the water, which were firework embers that landed in the Alamitos Bay. *Id*. at 1221. Whereas, the unlawful conduct here concerns a sophisticated recycling

company, that holds several NPDES permits, that has discharged stormwater with pollutants in water surrounding the Facility, including the wetlands, creek, and the Snoqualmie River. *See generally* Dkt. # 173. The proven unlawful conduct in *Naples* concerned a single isolated incident before the entity properly obtained permitting for future firework shows. *See id*. Here, GRR's unlawful conduct took place over the course of many years, with hundreds of violations, before and after permitting. *See generally id*. The nature of the violating party's business operations, the unlawful conduct at issue, and the frequency of the alleged violations differentiates the GRR's violations from the *Naples* case where it was "absolutely clear" the violation was not reasonably to recur.

Additionally, unlike in *Naples*, it is not "too speculative" that further violations could occur at the Facility or from Defendant's actions. 115 F.4th at 1223. The Court in *Naples* also noted that it wasn't "a case of an NPDES-permit holder violating its restrictions, which may raise the question of the permit holder's future compliance." Here, that is precisely the case. Many of the same facts discussed in the section above indicate that, just like in *Tosco*, polluted stormwater discharges continue at the Facility even though Defendant is no longer renting the property or conducting industrial activity there. 309 F.3d at 1157. Here, the Court has already found numerous CWA violations, indicating that violations are more likely to recur, even if Defendant no longer possesses the property.

Further, it is not "absolutely clear" that GRR will not violate the CWA at other facilities. Defendant also operates other facilities in Washington subject to NPDES stormwater requirements, a fact the court in *Cooke Aquaculture* found to make recurring violations more likely. 2019 WL 6310660, at *13 (declining to find the case moot where a facility was no longer operational because a court could still provide effective relief where defendant "continued to operate its other seven net-pen facilities in Puget Sound

1    under identical permits.").   Likewise, here, this is a fact weighs against a finding that

2    this matter is moot.

3          The record before the Court does not demonstrate that it is "absolutely clear" that

4    a future violation will not recur.   Accordingly, the Court finds that the case before the

5    Court is not moot because the Court can still order effective relief.   Therefore, the Court

6    will not dismiss this case for lack of subject matter jurisdiction.

7                                V.     CONCLUSION

8          Accordingly, the Court DENIES Defendant's Motions.  Dkt. # 181, 183.

9

10         Dated this 2nd day of June, 2025.

11

12

13

14                                   _____

15                                   The Honorable Richard A. Jones
                                     United States District Judge
16

17

18

19

20

21

22

23

24

25

26

ORDER - 24