UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-11766-RGS

CONSERVATION LAW FOUNDATION, INC.

v.

CHELSEA SANDWICH LLC AND GLOBAL COMPANIES LLC

MEMORANDUM AND ORDER ON MOTION TO DISMISS

August 29, 2025

STEARNS, D.J.

Plaintiff Conservation Law Foundation, Inc. (CLF) brought this citizen suit against defendants Chelsea Sandwich LLC and Global Companies LLC (collectively, Global), under Section 505 of the Clean Water Act, 33 U.S.C. § 1365 (CWA). CLF alleges that Global, at both its Revere oil storage terminal (Revere Terminal) and its Chelsea Sandwich oil storage terminal (Chelsea Terminal), discharged effluent in violation of the limits of its National Pollutant Discharge Elimination System (NPDES) permits, 33 U.S.C. § 1311(a) (Count I), and the permits' narrative effluent limitations related to control measures, Best Management Practices (BMPs), and its Stormwater Pollution Prevention Plan (SWPPP), 33 U.S.C. § 1311(a) (Count II). CLF also alleges that Global violated its NPDES permits' monitoring and reporting

requirements, 33 U.S.C. § 1311(a) (Count III). Global moves to dismiss all counts for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). For the following reasons, the court will allow Global's motion to dismiss in part and deny it in part.

## BACKGROUND

**Legal Background**

Enacted in 1972, the CWA is the core of a federal regulatory regime intended to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52 (1987), quoting 33 U.S.C. § 1251(a). To promote this goal, Section 301 of the CWA prohibits the discharge of any pollutant, by any person, from any point source, into the waters of the United States (including the contiguous coastal waters), except when expressly authorized by an EPA-issued or EPA-approved NPDES permit. *See* 33 U.S.C. §§ 1311(a), 1362(12)(A)(7); 40 C.F.R. § 122.2. The Commonwealth of Massachusetts has not established a federally-approved state NPDES program pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b). Consequently, in Massachusetts the NPDES permit program is administered by the EPA pursuant to Section 402(a) of the Act, 33 U.S.C. § 1342(a). NPDES permits impose limitations on the discharge of pollutants and

establish related monitoring and reporting requirements. Material noncompliance with a permit constitutes a violation of the Act. *See* 33 U.S.C. § 1342(h); *Friends of the Earth, Inc. v. Laidlaw Env't Servs., (TOC) Inc.*, 528 U.S. 167, 174 (2000).

The CWA includes a "citizen-suit" provision, which authorizes a private citizen to commence a civil action "against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation." 33 U.S.C. § 1365(a). The citizen plaintiff must have "an interest which is or may be adversely affected" by the violator. *Id.*, quoting § 1365(g). However, the Act bars a citizen from suing if the EPA or an approved State authority has already commenced and is "diligently prosecuting" an enforcement action. 33 U.S.C. § 1365(b)(1)(B). If a citizen prevails in her suit, "the [district] court may order injunctive relief and/or impose civil penalties payable to the United States Treasury." *Gwaltney*, 484 U.S. at 53, citing 33 U.S.C. § 1365(a).

Administrative compliance orders are an enforcement tool through which the EPA can compel a NPDES permit holder who is in violation of any permit condition to comply with the permit. *See* 33 U.S.C. § 1319(a)(3). Such orders must state with reasonable specificity the nature of the violation and may set a schedule for compliance that the EPA deems reasonable, making due allowance of the seriousness of the violation and any good faith efforts

3

by a violator to comply with the terms of the order. *See* 33 U.S.C. § 1319(a)(5)(A).

**Factual Background**

This proceeding involves two petroleum storage facilities in Revere and Chelsea, Massachusetts, that allegedly discharged pollutants, including polycyclic aromatic hydrocarbons (PAHs) and heavy metals, into the Chelsea River in violation of Global's NPDES permits. First Am. Compl. (FAC) (Dkt. # 36) ¶¶ 63-64. Global currently operates the Chelsea Terminal, and previously operated the Revere Terminal from at least 2019 to July of 2024.[1] FAC ¶ 91. Both Terminals are located on Chelsea Creek, a 2.6-mile-long navigable waterbody that separates Chelsea from Revere and Boston. FAC ¶ 4. The Terminals receive deliveries of petroleum products via ship, barge, or tanker truck. *Id.* ¶ 74. The products are stored in aboveground tanks until

---

[1] During the relevant period from 2019 to May of 2025, the Chelsea Terminal discharged under permit number MA0003280 (Chelsea Permit). FAC ¶ 6-7. The Chelsea Terminal is located at 11 Broadway in Chelsea, Massachusetts. *Id.*

From at least 2019 to July of 2024, the Revere Terminal discharged under permit numbers MA0000825 and MA0003425 (Revere Permits). *Id.* ¶¶ 8-10. The Revere Terminal ceased operations in October of 2024. First Charron Decl. (Dkt. # 38-1) ¶¶ 9-11. The EPA subsequently terminated its permit in May of 2025. *Id.* ¶¶ 9-11; Dkt. # 39 at 4. The Revere Terminal was located at 140 Burbank Highway in Revere, Massachusetts.

the petroleum is transferred to tanker trucks for delivery to consumers. *Id.* ¶ 75-77.

On September 30, 2022, the EPA issued final NPDES permits for the two terminals. FAC ¶¶ 4-9. These permits contained new limits on several contaminants, including PAHs, heavy metals, ammonia, and chlorine. Once the permits took effect in December of 2022, the FAC alleges that Global exceeded the new numeric effluent limits for PAHs and heavy metals, and continued to violate unchanged limits for benzene, PH, and total suspended solids over the next two years. FAC ¶¶ 11, 118-88, 194-236, 240-244, 246-251, 253-259, 261-262, 268-276. The violations were attributed to rainwater flowing over Global's tanks, docks, and truck-loading areas, as well as remediated polluted groundwater from historic industrial spills, and wastewater generated by Global's boiler maintenance and pipe testing. *Id.* ¶¶ 84-90, 98-104.

On May 9, 2024, CLF notified Global of its intent to file suit pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), regarding Global's alleged 97 self-reported numeric effluent limit violations at the terminals during the 5-year statutory period and alleged violations of water quality and narrative effluent limits relating to oil, grease, and petrochemicals, along with over 600 monitoring and reporting violations.

FAC ¶ 15; Dkt. # 36-1 at 3-4.  On July 9, 2024, CLF filed its original Complaint in this court.  Count I of the Complaint alleged various violations of the NPDES permits' effluent limitations; Count II alleged violations of the Massachusetts Department of Environmental Protection's Water Quality Standards; Count III alleged violations of the permits' narrative effluent limitations relating to characteristics of the discharge, control measures, best management practices, and stormwater pollution prevention plans (SWPPP); and Count IV alleged violations of the permits' monitoring and reporting requirements.  *See* FAC ¶¶ 381-424.

On August 19, 2024, a month after CLF filed its original Complaint, EPA and Global executed an administrative order by consent (Order) to address the Revere and Chelsea Terminals effluent limitation violations. The Order, which was the culmination of a three-year long negotiation between EPA and Global, required Global to "permanently cease all discharges" under the NPDES permit for the Revere Terminal by December 31, 2024.  Dkt. # 16-2 at 71.  It required Global to design, build, and install a state-of-the-art treatment system at the Chelsea Terminal by the end of April of 2025 at an estimated cost of $600,000 in order "to meet the metal and PAH effluent limits in the Chelsea Sandwich NPDES Permit."  Dkt. # 16-2 at 71; Dkt. # 17 at 2.  In addition, Global agreed to test the outfall from the treatment system,

including testing for hydrocarbons, total suspended solids, and metals for eight consecutive weeks to confirm compliance with the effluent limitations in the Chelsea Permit.[2]  *See* Dkt. # 17, Ex. F; Dkt. # 17 at 8.

On January 31, 2025, Global filed a motion to dismiss the Complaint on four grounds: (1) mootness; (2) vagueness and lack of enforceability; (3) insufficient notice of numerous of the violations set out in the Complaint; and (4) misnomer of Global GP LLC, Global Partners LP, and Global Operating LLC as the proper defendants.  *See* Dkt. # 19.

On March 14, 2025, the court held a hearing on Global's motion to dismiss.  The hearing focused on a discussion of the implications of the Supreme Court's March 4, 2025, decision in *City & County of San Francisco, California v. Environmental Protection Agency,* 604 U.S. 334 (2025).  *See* Dkt. # 30, 31.  Following the hearing, on May 7, 2025, the parties stipulated to the dismissal without prejudice of Count II of the Complaint in its entirety and Count III's claims of narrative effluent violations relating to the characteristics of the discharge.  *See* Dkt. # 33.  In turn, Global agreed not to move for dismissal of CLF's claims of narrative effluent violations relating to

---

[2] The Revere Terminal closed in October of 2024.  The Chelsea Terminal completed installation of the new treatment system contemplated by the EPA Order in April of 2025.  *See* Charron Decl. ¶¶ 9-11.

the facilities' control measures and the permits' corrective action requirements under *San Francisco* with certain exceptions. *See id.*

On May 15, 2025, CLF filed a First Amended Complaint (FAC) against Global. *See* Dkt. # 36. It alleges three counts focused on the Revere and Chelsea Terminals: violations of the NPDES permits' numeric effluent limitations (Count I), including newly alleged effluent violations at the Revere Terminal from June of 2024 to October of 2024 and the Chelsea Terminal from August of 2024 to March of 2025, *see* FAC ¶¶ 380-395; violation of the NPDES permits' narrative effluent limitations relating to control measures, BMPs, and SWPPP (Count II), *see* FAC ¶¶ 396-400; and violations of the NPDES permits' monitoring and reporting requirements (Count III), including 268 additional alleged sampling violations at the Revere Terminal prior to its closure, *see* FAC ¶¶ 340-343, 402-411. The FAC seeks declaratory judgment, injunctive relief, and civil penalties. On May 29, 2025, Global filed the present motion to dismiss the Amended Complaint as moot, pursuant to Fed. R. Civ. P. 12 (b)(1). *See* Dkt. # 38. The court held a hearing on Global's motion on August 27, 2025. *See* Dkt. # 53.

## LEGAL STANDARD

Challenges to the court's subject matter jurisdiction on mootness grounds are properly asserted under Rule 12(b)(1). *See D.H.L. Assocs., Inc.*

8

*v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999).  Although the party invoking the jurisdiction of a federal court bears the burden of proving the existence of such jurisdiction, *see Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007), "[t]he burden of establishing mootness rests with the party invoking the doctrine," *Am. C.L. Union of Massachusetts v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013).  "A case is moot where it is 'impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Massachusetts v. United States Dep't of Health & Human Servs.*, 923 F.3d 209, 220 (1st Cir. 2019), quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).  Mootness review is grounded in the "case or controversy" requirement under Article III of the United States Constitution, U.S. Const. art. III, § 2, cl. 1, and "ensures that courts do not render advisory opinions," *Id.*, quoting *Overseas Mil. Sales Corp. v. Giralt-Armada*, 503 F.3d 12, 16-17 (1st Cir. 2007).  "For declaratory relief to withstand a mootness challenge, the facts alleged must 'show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.*, quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975).

When determining mootness, the court may consider "(a) implications from documents attached to or fairly incorporated into the [amended] complaint, (b) facts susceptible to judicial notice, and (c) [any] concessions

9

in [the plaintiff]'s response to the motion to dismiss." *Nat'l Ass'n of Gov't Emps., Inc. v. Yellen*, 120 F.4th 904, 907 (1st Cir. 2024), quoting *Wiener v. MIB Grp., Inc.*, 86 F.4th 76, 83 (1st Cir. 2023) (first and second alterations in original). The court may also "look beyond the complaint when assessing mootness." *Id.* at 907; *see Ruskai v. Pistole*, 775 F.3d 61, 67 (1st Cir. 2014) ("We have sometimes acknowledged . . . factual submissions, . . . at least where they raise a question of mootness."); *O'Neil v. Canton Police Dep't*, 116 F.4th 25, 29-30 (1st Cir. 2024) (considering supplemental briefs and sworn statements by counsel after ordering the parties to address mootness). In the context of the CWA, the court assesses whether the alleged CWA violations could "reasonably be expected to recur." *Gwaltney.*, 484 U.S. at 66. When it's "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," a citizen suit under the CWA becomes moot. *Id.*

Applying those principles, the court will address CLF's request in the FAC for declaratory judgment and injunctive relief, and civil penalties separately.

### 1. Declaratory Judgment and Injunctive Relief

CLF requests: (1) declaratory judgment that defendants have violated and remain in violation of the NPDES permits, Section 301(a) of the CWA,

33 U.S.C. § 1311(a), and applicable CWA regulations; and (2) injunctive relief enjoining defendants from further violation of the requirements of the NDPES permits, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and the applicable CWA regulations.  *See* Dkt. # 36 at 43-44.

Here, the claims for declaratory judgment and injunctive relief are moot, as Global contends.  With respect to the Revere Terminal, Global ceased operations and all discharges in October of 2024.  *See* Charron Decl. ¶¶ 9-10.  EPA issued its final decision terminating the Revere NPDES permit on May 12, 2025.  *See id*. ¶ 11; Dkt. # 38, Ex. D.  The site, which no longer operates as a petroleum storage facility, has been permanently transferred to a new owner that is unaffiliated with Global.  *See* Dkt. # 17 at 3.

At the Chelsea Terminal, Global, as required by the EPA's Order, completed installation on April 22, 2025 (ahead of the April 30, 2025, deadline) of a new treatment system, specifically a Newterra Aquip Filtration System and Purus Containment System (Newterra System).  *See* Charron Decl. ¶¶ 6-7.  As of today's date, the Chelsea Terminal, in compliance with the Order, has completed over eight consecutive weeks of effluent sampling, as well as its July and August monthly effluent sampling, after treatment by the Newterra System.  *See id*. ¶ 6; Third Henderson Decl. (Dkt. # 51-1) ¶¶ 3-5.  Sampling results from April 22, 2025, through August 22, 2025, were

measured as either under the Chelsea Terminal's NPDES permit limits (and the Order's limits) or as non-detectable. *See* Third Henderson Decl. ¶¶ 3-5; Second Henderson Decl. (Dkt. # 44-1) ¶¶ 3-7; First Henderson Decl. (Dkt. # 38-2) ¶¶ 12-17; Dkt. # 38, Ex. J; Dkt. # 38, Ex. O; Second Charron Decl. (Dkt. # 44-2) ¶ 4.[3]

### 2. Civil Penalties

CLF additionally seeks civil penalties for the Revere and Chelsea Terminal's permit violations related to the effluent limits, narrative limits, and monitoring and reporting requirements.[4] *See* Dkt. # 40 at 11. Global

---

[3] However, on August 27, 2025, Global reported that the total post-treatment sample level of zinc was measured at 532 ug/L, which exceeded the permit limit. *See* Fourth Henderson Decl. (Dkt. # 52-1) ¶ 3. The output level proved curiously higher than the total zinc level detected prior to the processing of the effluent by the Newterra Treatment System (30.2 ug/L vs. 532 ug/L). *Id.* ¶ 3. Global agrees that an investigation of this abnormality by the EPA is warranted.

[4] Global argues that with respect to the Chelsea Terminal, the Count III monitoring and reporting violations are also moot. The FAC states that Global's failure to collect, analyze, and/or report at least 14 required effluent grab samples for the Chelsea Terminal on February 28, 2023, because of "laboratory error of invalid test" violates the reporting requirements of its 2022 Chelsea Permit. FAC ¶¶ 297-298. Although Global points out that the alleged monitoring and reporting requirements occurred on a single day, the lack of discharge violations "tells nothing about the likelihood that the defendant's violations of the *monitoring or reporting* requirements of the discharge permit would recur." *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n,* 389 F.3d 536, 544 (6th Cir. 2004) (emphasis in original).

urges the court to dismiss CLF's demand for civil penalties and argues that CLF "cannot show any deterrence value in seeking penalties EPA declined to assess." *See* Dkt. # 39 at 13.

According to the FAC, CLF provided notice of its intent to file suit a month before the EPA and Global agreed on August 19, 2024, to enter into the Order, which did not assess a civil penalty.  As a note, the cessation of illegal conduct following the commencement of a citizen suit "ordinarily does not suffice to moot a case" because civil penalties, as an alternative to injunctions, may serve "to deter future violations and thereby redress the injuries that prompted a citizen suitor to commence litigation." *Laidlaw*, 528 U.S. at 174.[5]

The CWA authorizes district courts in citizen-suit proceedings to assess civil penalties, which are not to exceed $25,000 per day for each

---

[5] The court recognizes that, to date, the Second, Third, Fourth, Seventh, and Eleventh Circuits hold that civil penalties are distinct from injunctive relief for mootness purposes. *See Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217, 1225 (9th Cir. 2024)*; Atl. States Legal Found., Inc. v. Pan Am. Tanning Corp.*, 993 F.2d 1017, 1021 (2d Cir. 1993); *Natural Res. Def. Council, Inc. v. Texaco Ref. and Mktg., Inc.*, 2 F.3d 493, 503 (3rd Cir. 1993); *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 696 (4th Cir. 1989); *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir. 1997); *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 (11th Cir. 1990).  The court will reserve its opinion on the issue until the completion of discovery (barring a superseding opinion of the United States Supreme Court or the First Circuit Court of Appeals).

violation, payable to the United States Treasury. *See* 33 U.S.C. §§ 1365(a), 1365 (d); *Laidlaw*, 528 U.S. at 175. In determining the amount of any civil penalty, the district court must consider "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." *Id.* at 175, quoting 33 U.S.C. § 1319(d).

The court, at this stage of the case, lacks the sufficient information to render judgment on the prayer for the imposition of civil penalties, which as the court concluded at the most recent hearing, warrants further discovery. The court will therefore set a shortened schedule for discovery and additional briefing from the parties.

## ORDER

For the foregoing reasons, Global's motion to dismiss is <u>ALLOWED</u> in part and <u>DENIED</u> in part.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE