UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-11766-RGS

CONSERVATION LAW FOUNDATION, INC.

v.

CHELSEA SANDWICH LLC AND
GLOBAL COMPANIES LLC

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

May 26, 2026

STEARNS, D.J.

Plaintiff Conservation Law Foundation, Inc. (CLF), brought this citizen suit against defendants Chelsea Sandwich LLC and Global Companies LLC (collectively, Global), under section 505 of the Clean Water Act, 33 U.S.C. § 1365 (CWA). The suit involves two Global facilities, the Revere oil storage terminal (Revere Terminal) and the Chelsea Sandwich oil storage terminal (Chelsea Terminal), located on sites adjacent to or feeding into Boston Harbor. CLF alleges that Global violated its National Pollutant Discharge Elimination System (NPDES) permits at the Revere and Chelsea Terminals in three respects: (1) by exceeding the permits' numeric effluent limitations (Count I); (2) by exceeding the narrative effluent limitations (Count II); and (3) by violating the monitoring and reporting requirements (Count III).

Before the court are the parties' cross-motions for summary judgment. Having reviewed the briefings, and after hearing oral argument, the court will allow Global's motion in part and deny CLF's motion.

## PROCEDURAL BACKGROUND

NPDES permits impose limitations on the discharge of pollutants and establish monitoring and reporting requirements for permitted discharges. Material noncompliance with an NPDES permit constitutes a violation of the CWA. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). The CWA includes a "citizen-suit" provision, which authorizes a private citizen to commence a civil action "against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation." 33 U.S.C. § 1365(a)(1). If a citizen prevails in the suit, "the [district] court may order injunctive relief and/or impose civil penalties payable to the United States Treasury." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 53 (1987), citing 33 U.S.C. § 1365(a).

On July 9, 2024, CLF filed its original Complaint in this court after notifying Global of its intent to file suit 60 days earlier on May 9, 2024, in compliance with the citizen suit provision of the CWA. *See* 33 U.S.C. § 1365(b)(1)(A). The Complaint alleged violations of Global's NPDES permits

as well as the Massachusetts Department of Environmental Protection's Water Quality Standards.

On August 19, 2024, one month after CLF filed its Complaint, the U.S. Environmental Protection Agency (EPA) and Global entered an administrative order by consent (EPA Order) addressing the effluent limitation violations at the Terminals. Compliance orders are an enforcement tool granted by the CWA to EPA as an alternative to formal litigation. *See* 33 U.S.C. § 1319(a)(3). In pertinent part, the EPA Order required the shutdown of the Revere Facility by October of 2024 and the installation of a stormwater treatment system at the Chelsea Terminal (the Newterra System). The Chelsea Terminal completed installation of the Newterra System in April of 2025. Defs.' Statement of Facts (Dkt # 77) ¶¶ 58-59. Global also agreed to the testing of discharges from the Chelsea outfall for eight consecutive weeks to demonstrate compliance with the NPDES effluent limitations. *Id*.

On January 31, 2025, Global filed its first motion to dismiss. On March 14, 2024, this court held a hearing on the motion. Following the hearing, on May 7, 2025, the parties stipulated to the dismissal without prejudice of Count II in its entirety and Count III, in part, for some of the narrative

effluent violation claims.  In turn, Global agreed not to move for dismissal of the other narrative effluent violation claims.

On May 15, 2025, CLF filed its First Amended Complaint (FAC), setting out the three same counts now before the court.  The FAC sought declaratory judgment, injunctive relief, and civil penalties.  On May 29, 2025, Global filed a motion to dismiss the FAC for mootness.  The court held a hearing on Global's motion on August 27, 2025.  In its order on August 29, 2025, the court granted Global's motion as to the prayers for declaratory judgment and injunctive relief, ruling them mooted by the closure of the Revere Terminal and compliance of the Chelsea Terminal with the EPA Order.  The court did not, however, dismiss CLF's claim for civil penalties, citing the lack of sufficient information to render judgment on the issue.  Following discovery, the parties filed the instant cross-motions for summary judgment.  The court held a hearing on the parties' motions on May 8, 2026.

## FACTUAL BACKGROUND

Defendants Chelsea Sandwich LLC and Global Companies LLC are wholly owned indirect subsidiaries of Global Partners LP, which owns 49 separate oil terminals in the United States.  Pl.'s Statement of Facts (Dkt # 80) ¶ 2.  The Chelsea Terminal and the Revere Terminal, which closed in October of 2024, are among the 49 storage facilities owned by Global

4

nationwide. *Id.* at ¶¶ 6-7. The Terminals receive and store bulk deliveries of petroleum products while awaiting transfer into marine vessels and tanker trucks. *Id.* at ¶ 36.

Between 2014 and 2022, Global operated the Terminals under the terms of NPDES permits issued by the EPA (the 2014 Revere Permit and 2014 Chelsea Permit). *Id.* at ¶¶ 9, 25-26. EPA issued new permits in December of 2022 for both Terminals, under which the Revere Terminal operated until its deactivation, and the Chelsea Terminal continues to operate. *Id.* at ¶¶ 5, 28. CLF's remaining claims concern violations of the original 2014 and the 2022 renewal Permits at both terminals.

## LEGAL STANDARD

The court will grant summary judgment where a movant shows that, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is "'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing version of the truth at trial.'" *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990), quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975). Cross-motions for summary judgment "do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either

of the parties deserves judgment as a matter of law on the facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001).

## DISCUSSION

## Defendant Global's Motion for Summary Judgment

Global presents three arguments in its motion for summary judgment. First, Global seeks dismissal of all three counts because it asserts that CLF's claims for penalties are moot. Second, Global seeks dismissal of certain numeric effluent permit violations (Count I), contesting both standing and whether the violations satisfied the CWA's continuing violation requirement. Third, Global seeks dismissal of Count III, on the same grounds as Count II.

*1. Mootness*

Global argues that CLF's claims are moot because the Revere Facility is now closed and because the Chelsea Facility is in compliance with the EPA Order. Alternatively, Global argues that penalties would not serve as a deterrent to future violations, also mooting the claims.[1]

---

[1] Global also contends that assessing penalties for activities addressed by the EPA Order would "undermine the Executive Branch's/EPA's authority under Article II of the Constitution and the Clean Water Act." *See* Defs.' Mot. for Summ. J. (Dkt # 76) at 21. This argument is unpersuasive because the EPA Order does not address the issue of civil penalties, nor is EPA seeking judicial enforcement of the Order's provisions. *See Blackstone Headwaters Coal., Inc. v. Gallo Builders, Inc.*, 32 F.4th 99, 109 (1st Cir. 2022) ("[C]itizen

The cessation of unlawful conduct "ordinarily does not suffice to moot a case" unless the defendant demonstrates that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 174, 189 (emphasis added).  "The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* at 170 (internal quotations omitted).   "Denial of injunctive relief does not necessarily mean . . . there is no prospect of future violations for civil penalties to deter." *Id.* at 171.[2]

Global argues that the *Laidlaw* "absolutely clear" standard has been met because: (1) the Revere Terminal is permanently closed; and (2) the

---

suits are precluded regardless of the relief sought *only when* the government seeks judicial enforcement rather than administrative action.") (emphasis added).

[2] Global cites two cases from the Eighth and Ninth Circuits for the proposition that civil penalty claims and injunctive relief claims should be assessed together for mootness.  The court need not evaluate that conclusion here, however, because Global acknowledges that, even under the cited cases, civil penalty claims are moot only if the *Laidlaw* standard is satisfied (i.e., whether it is "absolutely clear" that the violations cannot reasonably be expected to recur)."  Whether the *Laidlaw* standard moots civil penalty claims independently or derivatively through a mooted injunctive relief claim is a further question the court need not decide.  *See Miss. River Revival, Inc. v. City of Minneapolis, Minn.*, 319 F.3d 1013, 1016 & n.3 (8th Cir. 2003); *Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 158 F.4th 1052, 1063 (9th Cir. 2025).

Chelsea Terminal is in substantial compliance with the EPA Order. The court agrees with Global that the "absolutely clear" *Laidlaw* standard is met insofar as the Revere Terminal is concerned. Although *Laidlaw* recognized that a facility's closure does not automatically render a controversy moot, the Court in *Laidlaw* treated the fact that the defendant retained a valid NPDES permit as a possible invitation to future violations. *See id.* at 193. That is not the case here; the Revere permit has been irrevocably terminated. *See* Pl.'s Statement of Facts (Dkt # 80) ¶ 47. With no permit to violate, it follows that no future violation can occur. The court will consequently allow Global's motion with respect to the Revere Terminal.

Conversely, Global falls short of the "absolutely clear" standard with respect to the Chelsea Terminal. Even if a defendant brings itself into compliance after a suit is initiated and injunctive relief is therefore denied, a case is not moot where the court determines that the award of civil penalties will serve "to deter future violations." *Laidlaw*, 528 U.S. at 174. There is evidence in the record produced by CLF to suggest that ongoing issues may persist concerning the management of the Chelsea plant and the full integration of the Newterra system (as explained below). Whether compliance can be maintained is a factual question beyond the purview of summary judgment. *See id.* at 193 ("[T]he prospect of future violations is a

disputed factual matter."). Global's motion is therefore denied as to the Chelsea Terminal.

*2. Numeric Effluent Permit Violations*

Global contends that claims on nine specific exceedances should be dismissed. Six of those claims are based on internal discharge measurements in the Chelsea plant, for which Global contests standing. The remaining three claims are discrete external discharge violations, which Global contests under the CWA's continuing violation requirement.

a. Standing

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit." *Laidlaw* 528 U.S. at 181 (internal citations omitted). An organization's members have standing when they: "(1) "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 180-181. "[E]nvironmental plaintiffs adequately allege

9

injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Id.* at 183.

Global avers that CLF lacks standing for six permit violations at monitoring points located within the facility, called internal sampling locations. While Global concedes that six of the disputed discharges violated internal permit limits, it argues that CLF's members were not injured because the facilities remained in compliance with the permit requirements at the point of external discharge into the Chelsea River.[3]  CLF includes a helpful description of the relationship between measurements at the internal and external testing sites: external outfalls typically include discharges from more than one internal source; external outfalls therefore have a higher discharge limit than what is permitted at the individual internal sources.  Pl.'s Opp'n. (Dkt # 86) at 24.  There is no dispute that the contested external discharges were within the prescribed permit limits the use and enjoyment of the adjacent waterways  by CLF members was unaffected.  Therefore, in the absence of any actual injury to one or more of its members, CLF lacks standing with respect to these six alleged violations.

---

[3] CLF does not allege that any of its members were employed as workers in the plant itself.

10

*See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427-428 (2021) (regulatory violations do not necessarily translate to plaintiff injury). Thus, Global's motion for summary judgment with respect to the discharge exceedances at the internal monitoring points will be allowed.

b. Continuing Violation

Global contends that the remaining three "[i]solated events" (differing from the above six violations) do not meet the threshold for a continuing violation, to wit: an elevated total of suspended solids detected in 2022 at the Revere Terminal; an iron exceedance measured in 2023 at the Revere Terminal; and a pH violation in 2023 measured at the Chelsea Terminal. Defs.' Mot. for Summ. J. (Dkt # 76) at 20. A plaintiff in a citizen suit must allege a "continuous or intermittent violation" showing whether there is "a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney*, 484 U.S. at 57. As such, a citizen suit may not be based on "wholly past violations." *Id*. at 50. The date of the filing of the complaint is the point of time at which a court evaluates whether a violation is ongoing. *See Laidlaw*, 528 U.S. at 175. Courts, not unexpectedly, are divided on the

11

issue of whether continuing violations of one parameter may be used to impute continuing violations to another parameter.[4]

It follows from this court's rulings that the historical violations at Revere Plant do not meet the continuing violation requirement. The continuing violation requirement is focused on the determination whether there is "a reasonable likelihood that a past polluter will continue to pollute in the future." It is a matter of simple logic that a closed plant makes that likelihood a fat zero. *Gwaltney*, 484 U.S. at 57. The pH violation at the Chelsea facility likewise does not meet the continuing-violation requirement. The violation was a single, isolated exceedance that occurred nearly a year before the Complaint was filed, with no alleged recurrence in the intervening months. It is representative of the "wholly past violation" that *Gwaltney* placed outside the reach of a citizen suit. Nor can CLF use other viable violations to render the pH exceedance ongoing: pH is a distinct parameter,

---

[4] *Compare Pub. Int. Rsch. Grp. of New Jersey v. Yates Indus., Inc.*, 790 F. Supp. 511, 516 (D.N.J. 1991) ("[E]vidence of violations in some parameters was admissible as evidence that future violations are likely in other parameters . . . particularly where . . . numerous parameters had been violated on many occasions since filing of suit"), *with PennEnvironment v. PPG Indus.*, Inc., 964 F. Supp. 2d 429, 467 (W.D. Pa. 2013) ("[A] single isolated exceedance of a parameter is insufficient to establish an ongoing violation") (internal quotations and citations omitted).

and CLF has alleged no connection between it and other pollution controls. Global's motion therefore will be allowed as to the ongoing violation claims.

*3. Count III - Monitoring and Reporting Violations*

Global makes two arguments in support of dismissing Count III: that CLF lacks standing and that the violations were not continuing.

a. Standing

Global contends that CLF lacks standing because it does not articulate an injury from monitoring and sampling violations. *See* Defs.' Mot. for Summ. J. at 27. Citizen suits under the CWA may seek to enforce all permit conditions, including monitoring requirements. *See Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 832-833 (9th Cir. 2021). Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992). While a "bare procedural violation, divorced from any concrete harm" will not suffice, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), the monitoring and reporting requirements under an NPDES permit are not bare procedure: "[T]hey serve the public's

substantive interest in clean water" that the CWA advances "by providing a cause of action to affected citizens." *Inland Empire*, 17 F.4th at 833.[5]

A polluter's failure to comply with monitoring and reporting requirements can inflict cognizable injury in two ways. First, it threatens a plaintiff's aesthetic and recreational interests by creating "a genuine threat of undetected past or future polluted discharge." *Inland Empire*, 17 F.4th at 833-834. Second, it inflicts informational injury where accurate and complete reporting data "would reduce the risk of injury to a plaintiff who wishes to know whether the water is polluted before using [it]." *Id.* at 833.

CLF members have concrete aesthetic and recreational interests in the Chelsea River. Member plaintiff Ms. O'Brien kayaks, Mr. Ragan birdwatches, and Ms. Calandriello hosts community events. Pl.'s Statement of Facts (Dkt # 80) ¶¶ 161, 171, 177. Global's monitoring and reporting failures create a threat that discharges affecting those interests will go undetected and cause informational injury. Mr. Ragan states that Global's reporting lapses cause him to mistrust the quality of the nesting areas of the watershed he accesses for his birdwatching hobby. Ms. O'Brien affirms that

---

[5] *See also Nw. Env't Advocs. v. City of Portland*, 56 F.3d 979, 988 (9th Cir. 1995) ("In fact, permit conditions that courts commonly enforce under § 505(a) are not effluent limitations, but rather, requirements for retaining records of discharge sampling and for filing reports.").

the violations "contribute[d]" to the harms she had experienced, *id.*, Ex. AW (Dkt # 78-49) at 91; and Ms. Calandriello affirms her concerns should it be shown that Global has used wrong reporting codes, *id.*, Ex. BA (Dkt # 78-53) at 46. Expressions of generalized ideological or personal concerns will not as a rule satisfy the injury-in-fact standard. *See Transunion,* 594 U.S. at 24. Nonetheless, actual and founded apprehension that impacts a member of the public's personal enjoyment of the environment is sufficient to meet the threshold of a concrete injury for standing purposes, at least where Congress in authorizing a citizen suit has recognized as much. *See Spokeo,* 578 U.S. at 340-341 ("Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation."). Global's motion will therefore be denied as to the standing objection.

b. Continuing Violation

Global next contends that the monitoring and sampling allegations should be dismissed because they were not continuing violations.[6]  Global

---

[6] As discussed above, a plaintiff in a citizen suit must allege a "continuous or intermittent violation," which serves to show whether there is "a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney*, 484 U.S. at 57.

addresses four categories of allegations, as listed in Exhibit 3-X (Dkt # 75-3) at 425-431 (the Summary Table). The court will address these in the order presented.

The first set of allegations concern rows 1-177 of the Summary Table, consisting of 177 reporting violations occurring in 2020, 2021, and 2022 in which Global reported a zero-value on its Discharge Monitoring Report Forms (DMRs) for Revere. Global contends that it followed EPA reporting instructions promulgated in 2010 which directed, in short, that samples reading below the permit limit should be reported as '0.' Defs.' Statement of Facts (Dkt # 77) ¶ 117. CLF does not dispute the 2010 EPA instructions. CLF, however, points out that in 2015 EPA revised the reporting instructions by replacing the '0' report with the more informative "NODI Code B." Despite the change, Global, for over five years, continued with the '0' report designation in violation of the reporting requirement. Nonetheless, after EPA issued Global its new permits in 2022, Global changed its practice and no similar coding violations are alleged to have recurred. Therefore, at the time of the filing of the Complaint (two years after the new permits were issued), the violations had ceased. Global's motion will therefore be granted as to these 177 alleged violations on the Summary Table.

The next allegation concerns row 178 of the Summary Table, where Global failed to collect a sample of a total organic carbon discharge at the Revere Facility.  Global characterizes the event as inadvertent, while CLF argues that the error is subject to strict liability under the CWA.  While CLF accurately describes the strict liability regime of the CWA, the cases CLF cites in support are instances of EPA enforcement, not citizen enforcement suits.  Conversely, citizen suits bear the requirement of showing that the violation is not a "wholly past" violation.  *Laidlaw*, 528 U.S. at 188.  The organic carbon sample omission proved to have been a one-time occurrence, and not a continuing violation.  Global's motion will be granted as to the omission allegation.

The next claim involves rows 179-192 of the Summary Table, where a laboratory failure caused Global to enter a mistaken error code in its Chelsea plant report.  CLF does not dispute that Global collected a sample at the "earliest opportunity."  Dkt # 88 at 42.  CLF also does not dispute that "the laboratory has not reported a similar issue . . . since this single quality control event."  *Id*. at 43.  Under these circumstances, the claim has not met the continuing violation requirement.  Global's motion is granted as to these allegations.

17

The final set of reporting errors concerns Rows 193-204 of the Summary Table, where Global failed to take samples within the first 60 minutes of discharge at both facilities, as required by its permits. Global contends that safety concerns about water accumulation prevented timely sampling and that it communicated those concerns to EPA. But communicating a problem is not remedying it. CLF points out, and Global's own deposed witnesses confirm, that no changes have been made to sample collection practices since 2019. Pl.'s Mot. for Partial Summ. J. (Dkt # 78) Ex. W at 34:20-24; Ex. Z at 58:19-21, 37:1-15; Ex. AI at 34:2-7. Without any evidence of mitigation, the violations meet the continuing violation threshold. Global's motion will be denied as to these final claims.

**Plaintiff CLF's Motion for Summary Judgment**

CLF's moves for partial summary judgment on Count I, praying that the court "declare . . . that Global is liable for violating its federal NPDES permits and the Clean Water Act." Pl.'s Mot. for Summ. J. (Dkt # 79) at 29. CLF states that it does not seek declaratory judgment, instead stating that it seeks a finding of "liability," which CLF states would allow future proceedings to more narrowly determine the appropriate penalty amount. CLF Reply to Opp'n (Dkt # 91-1) at 2.

In August, this court dismissed CLF's claim seeking "declaratory judgment that defendants have violated and remain in violation of the NPDES permits . . . ." Mem. and Order on Mot. to Dismiss (Dkt # 54) at 10-11. In the same order, the court stated that more information was needed to determine whether civil penalties are appropriate, citing the factors a district court must consider in deciding the scope and amount of a civil penalty. *See id.* at 14. Neither requesting declarative relief nor requesting a determination of penalties, the court does not find any basis for the relief CLF seeks at summary judgment whether it is labeled as "declaratory" or as a "finding of liability." CLF's motion will therefore be denied.

## ORDER

For the foregoing reasons, Global's motion for summary judgment is ALLOWED except for the mootness claim involving the Chelsea Facility and the continuing violation claim set out at Rows 193-204 of the Summary Table (Count III). CLF's motion for partial summary judgment is DENIED. The parties will within forty-five (45) days of the date of this Order submit proposals for a final judgment in this matter meeting the public interest in both deterrence and the affirmative goals of environmental protection. The proposals may be submitted independently, or as the court would prefer, as the collaborative effort of the parties.

**SO ORDERED.**

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE